IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILIP J. VONVILLE, | : | CIVIL NO. 3:14-CV-1582 |
| | : | |
| Petitioner, | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| | : | |
| JOHN KERESTES, et al., | : | |
| | : | |
| Respondents | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

Stripped to its essentials there are two components to every criminal case: an *actus reus*, or criminal act, and a *mens rea*, or criminal intent. In this state homicide case, there is no doubt regarding the criminal act. Rather, it is entirely undisputed that on September 19, 2009, Philip Vonville stabbed and killed Christopher Hernandez.

But this act, standing alone, does not establish the degree of criminal culpability for Vonville because it must also be shown that Vonville acted with a criminal intent when he took Hernandez's life. In this setting, the law creates a continuum of culpability based upon the defendant's state of mind. This continuum of culpability spans from pre-meditated murder, to manslaughter, to absolute

innocence depending upon Vonville's mental state at the time of the events which led to Hernandez's death.

In the instant case, the question of Vonville's culpability was inextricably intertwined with the issue of his state of mind, a question whose answer in many ways rested within the province of Vonville himself. With the critical issue in this case defined in this fashion, as a question of intent, a series of missteps by counsel hobbled Vonville in presenting evidence regarding his state of mind at the time of this killing. Thus, the defense was precluded from presenting expert testimony at trial on this issue due to counsel's failure to provide timely notice of the intent to elicit such testimony as required by the Pennsylvania Rules of Criminal Procedure. This shortcoming of counsel then further redounded to Vonville's detriment at trial when the trial court also precluded lay testimony concerning Vonville's mental state at the time of this killing. While the Pennsylvania appellate courts later upheld these evidentiary rulings, the rulings effectively silenced Vonville's witnesses who would have presented evidence concerning his state of mind, the only truly contested issue in this case.

With his witnesses silenced by these missteps of counsel, at trial Vonville elected to exercise his Constitutional right to remain silent. The evidence then shows that Vonville was inadvertently penalized for the exercise of this

fundamental constitutional right at trial. Specifically, at trial the jury was erroneously instructed that: "*You may draw any inference of guilt from the fact that he did not testify in his own defense*." (Doc. 27-2, p. 78)(emphasis added.)  Thus, in a case which turned entirely on Vonville's state of mind, after Vonville was precluded from presenting expert or lay testimony concerning his mental state due to counsel's failings, it appears that the jury was instructed that it could draw an adverse inference from Vonville's exercise of his right to remain silent. Even more remarkably, this erroneous instruction was not objected to at trial, challenged on direct appeal, or litigated in any fashion in Vonville's state post-conviction proceedings and appeals.

Given the fundamental nature of this constitutional error and the fact that this error was never litigated in state court, beyond inviting us to speculate that the transcribed jury instruction was not in fact given, the Commonwealth is now largely left to argue that Vonville has procedurally defaulted this constitutional claim that the jury instruction invited the jury to penalize him for exercising his rights under the Fifth Amendment and his counsel was ineffective in failing to object to this erroneous instruction. While the procedural default doctrine plays an important role in our legal system, that doctrine is subject to a narrow exception recognized by the United States Supreme Court in that: "a procedural default will

not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." <u>Martinez v. Ryan</u>, 566 U.S. 1, 17 (2012). While a petitioner must make an extraordinarily exacting showing in order to avail himself of this narrow exception to the procedural default doctrine, we find in this case that Vonville's procedural defaults should be excused, and that the fundamental, structural error in the jury instructions in this case, which permitted the jury to draw an adverse inference regarding Vonville's intent from Vonville's silence, coupled with counsel failure to provide timely notice of such testimony – a misstep that silenced Vonville's other witnesses – justifies habeas corpus relief for the petitioner.

## II.     <u>Statement of Facts and of the Case</u>

### A.     <u>The Killing of Christopher Hernandez</u>[1]

This homicide case arose out of a tempestuous relationship between Philip Vonville and  Brittney Hartley. Vonville met Hartley when he was in his late 20's and she was a 17-year old high school student. Shortly after meeting, Vonville and Hartley began a romantic relationship. Vonville moved into the home that Hartley shared with her parents and by Valentine's Day 2009 Vonville and Hartley were

---

[1] This narrative of the events surrounding Hernandez's death is taken from the trial transcript in <u>Commonwealth v. Vonville</u>. (Docs 27-1 and 27-2 and 35-20, 35-21.)

engaged to be married. However, over time Hartley perceived Vonville to be increasingly controlling, obsessive and jealous. Thus, Vonville sought to estrange Hartley from her other friends and acquaintances, and endeavored to monitor her social media activity. Vonville also repeatedly accused Hartley of infidelity. Hartley recoiled at this obsessive conduct on Vonville's part and upon graduation of from high school enlisted in the Army Reserve, a career path that Vonville opposed. Hartley was scheduled to commence her basic training in late September, 2009.

This growing estrangement, in turn, sowed the seeds of tragedy. As the date of Hartley's enlistment approached in late-September 2009, Vonville began acting in an increasingly jealous, violent and erratic fashion. He accused Hartley of infidelity, threatened to harm both Hartley and any other intimate partner she might have, followed Hartley to her work, and angrily confronted her friends. As a result, two days prior to the killing of Chris Hernandez, on September 17, 2009, Hartley broke off her engagement with Vonville. This decision on Hartley's part inspired further anger and enmity by Vonville, who became physically confrontational with Hartley and her friends. The evidence also suggests that Vonville was increasingly self-destructive and contemplated suicide.

In the days immediately preceding her departure to the service, Hartley was in the company of Chris Hernandez, the victim in this case. Hartley and Hernandez had known each other in high school and had dated briefly prior to Hartley's romantic involvement with Vonville. As her relationship with Vonville collapsed into acrimony Hartley had rekindled her friendship with Hernandez. For his part, Vonville had seen Hartley in Hernandez's company, having encountered them together at Hartley's home in the early morning hours of September 19, 2009.  In addition there is some indication that the two men may have exchanged acrimonious text messages shortly before Hernandez's death. Having observed Hartley and Hernandez together at Hartley's home in the early morning hours of September 19, 2009, later that day, Hartley was informed by her mother that Vonville was at their home, distraught, and was destroying his personal effects. Hartley went home to confront Vonville, and was followed to her home by Hernandez.

Hartley confronted Vonville outside the home, where he was burning clothing he had kept at the home. An argument ensued between Vonville and Hartley. As Hartley and Vonville argued, Hernandez arrived at the scene in his pick-up truck. Vonville observed Hernandez, pulled a knife and raced over to the truck. Reaching into the truck, Vonville stabbed Hernandez twice, once in the arm

before inflicting a second, fatal wound to his abdomen. As he assaulted Hernandez, Hernandez cried out to Vonville that he was crazy, and Vonville replied, "you're damn right, I am crazy." Hartley then intervened, interposing herself between Hernandez and Vonville and cradling Hernandez in her arms as he cried out that he was dying.  Presented with this scene, Vonville stabbed himself in the stomach and slit his wrists, wounds that did not prove to be fatal. Hernandez was rushed to the hospital but by the evening of September 19, 2009, his wounds proved to be fatal. Vonville, in turn, was hospitalized for treatment of his self-inflicted wounds. While in the hospital, Vonville was interviewed by police and acknowledged killing Hernandez.

### B.    Vonville's State Prosecution

On September 19, 2009, Vonville was charged with the slaying of Christopher Hernandez. The charges levied against Vonville were cast generally as criminal homicide but as presented at trial included murder in the first degree, murder in the third degree, and manslaughter. Commonwealth v. Vonville, No. CP-45-CR-0001708-2009. (Doc. 35-6.) The array of charges filed against Vonville reflected the potential continuum of mental culpability which could arise from this killing, a continuum that included a pre-meditated killing with malice, a slaying committed with malice but without pre-meditation, or a killing committed in the

7

heat of a sudden passion. Thus, the charging decisions in this case acknowledged at the outset that, for Vonville, the crucial issue of criminal culpability was framed by his state of mind at the time of this killing.

The factual background of this slaying also dictated that Vonville's mental state would play a pivotal role in the defense of this case. Vonville's volatile conduct, which culminated in his apparent suicide attempt immediately after he stabbed Hernandez, made it apparent that Vonville's state of mind and mental health would be critical elements of any defense to these homicide charges.

With the question of culpability framed in this fashion, on January 26, 2010, Vonville's trial counsel requested leave of court to conduct a psychiatric examination of Vonville to ascertain both his competence to stand trial, and his mental state at the time of the commission of this offense. That motion was granted on February 1, 2010.  (Doc.  35-9, p. 1.) This examination was conducted by Dr. Ian Iverson, who produced a report of this examination on March 18, 2010. (Doc. 35-8, p. 1.)  In this report Dr. Iverson found that Vonville was competent to stand trial but also found that: "It appears that the insanity defense could not be argued, however [Vonville] certainly meets the criteria for diminished capacity and the status of guilty but mentally ill." (Doc. 35-15, p.2., n. 3.)

Vonville's defense counsel possessed this report which identified Vonville's mental state as a potentially mitigating factor in this case in March of 2010. Moreover, on March 23, 2010, the trial court entered an order granting defense counsel's request for an extension of time to asses this report. That order, however, instructed counsel in clear and precise terms that: "Upon receipt of the psychiatric evaluation/report, Defendant shall have thirty (30) days within which to file any pre-trial motions. Failure to file pre-trial motions within this time period shall be deemed a waiver by Defendant and acquiescence to a trial." (Doc. 35-9, p.2.)

Despite this clear admonition from the court, Vonville's counsel failed to file a timely notice of intention to present expert testimony regarding Vonville's mental state, as required by Pennsylvania Rule of Criminal Procedure 568.[2]

---

[2] Rule 568 provides as follows:

**(A) Notice by Defendant.**

(1) *Notice of Defense of Insanity or Mental Infirmity.* A defendant who intends to offer at trial the defense of insanity or mental infirmity shall file with the clerk of courts not later than the time required for filing an omnibus pretrial motion provided in Rule 579 a notice of the intention to offer the defense of insanity or mental infirmity, and shall serve a copy of the notice and a certificate of service on the attorney for the Commonwealth.

(a) The notice and certificate shall be signed by the attorney for the defendant, or the defendant if unrepresented.

(b) The notice shall contain specific available information as to the nature and extent of the alleged insanity or mental infirmity, the period of time that the defendant allegedly suffered from such insanity or mental infirmity, and the names and addresses of witnesses, expert or otherwise, whom the defendant intends to call to establish such defense.

Counsel's oversight is largely unexplained on the record, but that oversight set in motion a series of events which hobbled Vonville's defense. Thus, the failure to provide timely notice of this expert witness testimony led the Commonwealth to file a motion *in limine* on June 22, 2010, which sought to preclude this expert

---

(2) *Notice of Expert Evidence of Mental Condition.* Except as provided in Rule 841, a defendant who intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing (1) on the issue of guilt, or (2) in a capital case, on the issue of punishment, shall file with the clerk of courts not later than the time required for filing an omnibus pretrial motion provided in Rule 579 a notice of the intention to offer this expert evidence, and shall serve a copy of the notice and a certificate of service on the attorney for the Commonwealth.

(a) The notice and certificate shall be signed by the attorney for the defendant, or the defendant if unrepresented.

(b) The notice shall contain specific available information as to the nature and extent of the alleged mental disease or defect or any other mental condition, the period of time that the defendant allegedly suffered from such mental disease or defect or any other mental condition, and the names and addresses of the expert witness(es) whose evidence the defendant intends to introduce.

**(B) Failure to File Notice.**

(1) If the defendant fails to file and serve a notice of insanity or mental infirmity defense, or a notice of expert evidence of a mental condition as required by this rule, the court may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, may grant a continuance to enable the Commonwealth to investigate such evidence, or may make any other order as the interests of justice require.

(2) If the defendant omits a witness from the notice of insanity or mental infirmity defense or a notice of expert evidence of a mental condition, the court at trial may exclude the testimony of the omitted witness, may grant a continuance to enable the Commonwealth to investigate such evidence, may grant a continuance to enable the Commonwealth to investigate the witness, or may make any other order as the interests of justice require.

testimony at Vonville's trial. (Doc. 35-8.) That motion was granted by the trial

court on the same day upon which it filed in an order which provided that:

> [I]t is hereby ORDERED that the Defendant shall not offer into
> evidence, nor reference in any way at trial the alleged insanity, mental
> infirmity, mental defect or mental condition of the Defendant. It is
> further ORDERED that Dr. Ian Levinson and/or any other mental
> health professional is precluded from testifying or offering evidence
> on behalf of Defendant.

(Doc. 35-8.)

Consequently, as Vonville's trial approached this expert witness testimony

was lost to the defense due to the inaction of counsel. With his mental state

defense undermined in this fashion, Vonville then proceeded to trial on July 12

and 13, 2010. (Docs. 35-20, 35-21.) At the conclusion of the Commonwealth's

case, Vonville's efforts to present evidence regarding his state of mind at the time

of this killing suffered another serious blow when the trial judge excluded

evidence proffered by the defense; namely, the testimony of Hartley's mother

who was proffered by the defense as a lay witness who could testify to Vonville's

profoundly depressed, suicidal frame of mind at the time of this confrontation

between Vonville and Hernandez. (Doc. 35-21, p. 29.) The Commonwealth

objected to the introduction of this lay evidence arguing that it violated the court's

ruling precluding expert witness testimony. After argument, and despite defense

counsel's assertion that some mental state evidence was "pretty key" to the defense, the trial judge agreed that the ruling prohibiting expert testimony also precluded this lay witness evidence, and excluded this testimony. (Doc. 35-21, pp. 29-31.) Thus, by the conclusion of the Commonwealth's case the failure of defense counsel to file a timely notice relating to the sole issue in dispute in this case, Vonville's mental state, had resulted in the preclusion of all expert and lay testimony on this question.

With the defense efforts to present this mental state evidence silenced, the defense presented no witnesses and Vonville elected to exercise his Fifth Amendment right to remain silent. (Doc. 35-21, pp. 40-3.) The case then proceeded to closing arguments and instructions to the jury.

Those jury instructions reveal an instruction which, while doubtless inadvertent, reflected a fundamental, structural and profound misstatement of the law. Specifically, in the course of the jury charge the trial transcript reflects that the court instructed the jury regarding Vonville's exercise of his Fifth Amendment rights in a fashion which was antithetical to those rights, advising the jury that:

> The Defendant did not testify. It is entirely up to the Defendant in every criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. *You may infer any*

*inference of guilt from the fact that he did not testify in his own defense.*

(Doc. 35-21, p. 78)(emphasis added.)

In sum, when this case was presented to the jury, not only had Vonville been denied any opportunity to present expert or lay testimony regarding his mental to the jury, that jury had also been expressly instructed that: "You may infer any inference of guilt from the fact that he did not testify in his own defense." (Id.) At the conclusion of the jury instructions the trial court asked defense counsel if she had any objections to the instruction given, and counsel announced that she was satisfied with this jury charge, which on its face permitted the jury to infer Vonville's guilt from his silence. (Doc. 35-21, p. 85.)

Even though Vonville had failed to present any lay or expert witness relating to his state of mind, and the judge had informed the jury that they may make any inference of guilt from the fact that he did not testify in his own defense, the jury evidently struggled with the issue of criminal intent and state of mind in this case. In fact, the jury requested further instructions on the mental state elements of these offenses, before returning its verdict convicting Vonville of third-degree murder. (Doc. 35-21, pp. 87-90.)

On September 30, 2010 Vonville was sentenced to 20-to-40 years imprisonment following this murder conviction and the petitioner began a lengthy course of post-conviction proceedings challenging his conviction. These post-conviction proceedings, like Vonville's trial, were marked by oversights by counsel, oversights which undermined his defense, and failed to fully preserve what are now crucial issues in this case.

### C.   <u>Vonville's Direct Appeal</u>

Following imposition of this sentence, Vonville pursued a direct appeal of his conviction with the assistance of his trial counsel. In this direct appeal, Vonville identified the exclusion of his expert and lay witnesses as an appellate issue, but notably did not identify the erroneous jury instruction which permitted an adverse inference from this exercise of his Fifth Amendment rights as an appeal issue. (Doc. 35-4.) On November 1, 2011, the Pennsylvania Superior Court affirmed Vonville's conviction and sentence. (Doc. 35-14.) In its opinion the Superior Court documented the series of procedural missteps by Vonville's counsel which led to the exclusion of the expert witness testimony. (<u>Id</u>., pp. 5-6.) The appellate court then concluded that, in light of these failings by defense counsel to provide timely notice of intent to rely upon this testimony, the trial judge acted within his discretion in precluding this evidence. (<u>Id</u>.) The Superior

Court also suggested that this evidentiary issue was moot in light of Vonville's conviction on third-degree murder, an offense which did not require pre-meditation. (Id., p.7.)  In reaching this conclusion, the appellate court viewed the relevance of this mental state evidence narrowly as relating only to the distinction between first- and third-degree murder. The Superior Court did not seem to consider the potential relevance of state of mind evidence as it related to the lesser offense of manslaughter. This was a curious omission since the Pennsylvania Supreme Court has long recognized that: "where a defendant asserts that he acted in the heat of passion, it seems clear that any evidence-lay or psychiatric-pertinent to that defense should be admissible." Commonwealth v. McCusker, 448 Pa. 382, 391, 292 A.2d 286, 290–91 (1972).[3] Nor did the Superior Court appear to consider the cumulative impact of this exclusion of expert testimony, the subsequent exclusion of lay testimony regarding Vonville's state of mind at the time of the killing, and the jury instruction which permitted the jury to draw an adverse inference from Vonville's silence. On this score, the limited scope of the appellate court's review appears to have been a function of counsel's failure to identify this

---

[3] There is some suggestion that the courts viewed this expert testimony issue from this narrow perspective because Vonville's trial counsel failed to argue the broader relevance of this evidence to the manslaughter charge, and instead simply focused on the question of its relevance to a diminished capacity defense, an issue which was largely rendered moot by the jury's verdict. (Doc. 35-19)

jury instruction issue, or argue its cumulative impact in conjunction with the exclusion of this mental state evidence.

The Pennsylvania Supreme Court then denied allocator on this direct appeal, bringing Vonville's direct appeal to a close.

### D. <u>Vonville's State Post-Conviction Act Litigation</u>

With his direct appeal exhausted, albeit in this halting and incomplete fashion, Vonville pursued relief under Pennsylvania's Post Conviction Relief Act, (PCRA), 42 Pa.C.S. § 9545. Vonville initially filed a *pro se* PCRA motion in June of 2012. (Doc. 35-13.) Counsel was then appointed to represent Vonville in these PCRA proceedings, and filed a second, counseled petition in August of 2012. (Doc. 35-2.) This counseled petition raised claims of ineffective assistance of counsel by Vonville's trial attorney, and specifically cited trial counsel's neglect in failing to file a timely notice of intent to present expert witness testimony regarding Vonville's mental state. However, the ineffective assistance of counsel claims advanced in this petition did not include any claim relating to the erroneous jury instruction which allowed jurors to reach an inference of guilt from the fact that Vonville did not testify in his own defense, or trial counsel's failure to object to that instruction.

In October of 2012, the trial court[4] entered an opinion and order denying Vonville's PCRA petition. (Doc. 35-18.) With respect to Vonville's challenge to the effectiveness of his trial counsel based upon trial counsel's failure to timely provide notice of intent to present expert testimony regarding his mental state, the PCRA court found: "the Defendant's claim is of arguable merit. We also highly doubt that trial counsel's conduct was reasonable." (Id., p. 7.) However, despite these findings that counsel's performance fell below reasonable standards of competence, the PCRA court denied Vonville post-conviction relief on this claim, reasoning as the state courts had done in the past that this issue was moot since the expert evidence would have only related to a diminished capacity defense, a question which was largely resolved by the jury's third-degree murder verdict. Thus, like the courts which previously considered Vonville's direct appeal, the PCRA court did not examine the relevance of this evidence to the lesser offense of manslaughter "where  . . . it seems clear that any evidence-lay or psychiatric-pertinent to that defense should be admissible." Commonwealth v. McCusker, 448 Pa. 382, 391, 292 A.2d 286, 290–91 (1972). Nor did the PCRA court consider the cumulative impact of this exclusion of expert testimony, the subsequent exclusion

_____

[4] By this time the presiding judge in Vonville's 2010 trial was no longer on the bench and another judge, who had not participated in the original trial, presided over this PCRA proceeding.

of lay testimony regarding Vonville's state of mind at the time of the killing, and the jury instruction which permitted the jury to draw an adverse inference from Vonville's silence. Once again, the scope of the PCRA court's decision was a function of counsel's failure to identify this jury instruction issue, or argue its cumulative impact in conjunction with the exclusion of this mental state evidence.

Vonville appealed this decision to Pennsylvania's Superior Court, which affirmed the denial of post-conviction relief on September 9, 2013, in an opinion which paralleled the reasoning of the PCRA court. (Doc. 35-15.) Vonville's petition for allowance of appeal was then denied by the Pennsylvania Supreme Court on April 29, 2014. (Doc. 35-10.) With this decision, Vonville's state post-conviction litigation came to a close. This state litigation came to a close without any recognition or consideration of the fact that there appeared to be a fundamental error in the jury instructions in this case, an error that allowed jurors to draw an adverse inference from Vonville's silence and his failure to present evidence relating to his mental state at the time of Christopher Hernandez's killing.

### E.    Vonville's Federal Habeas Corpus Petition

Instead, the issue of this erroneous jury instruction and trial counsel's ineffectiveness in failing to object to the instruction was first presented when Vonville filed this *pro se* petition for writ of habeas corpus in federal court. (Doc.

1.) Given the failure of Vonville's state trial and PCRA counsel to raise this issue in state court, the Commonwealth responded to this petition by arguing that Vonville's claims were procedurally defaulted. (Doc. 15.) After this case was assigned to undersigned, we examined the petition and response. Recognizing the gravity of this legal claim, which was first raised in the *pro se* federal habeas corpus petition, and the difficulties that a *pro se* litigant would face in addressing the obstacles raised by the procedural default doctrine, we appointed the Federal Public Defender's office to represent Vonville. (Doc. 24.) That office then undertook a comprehensive review of this case, and filed an amended petition, which both addressed the procedural default issues in this case, and identified other potential claims in addition to those raised by Vonville. (Docs. 27-30.) The Respondents then responded to this amended petition, (Doc. 35) and Vonville filed a reply, or traverse. (Doc. 36.) Consequently as of April 2018, this matter was ripe for resolution.

For the reasons set forth below, we find that Vonville has made the extraordinarily exacting showing necessary to avail himself of the narrow exception to the procedural default doctrine recognized by the Supreme Court in Martinez v. Ryan, 566 U.S. 1, 17 (2012). We therefore find in this case that Vonville's procedural defaults should be excused. We further conclude that the

fundamental, structural error in the jury instructions in this case, which permitted the jury to draw an adverse inference regarding Vonville's intent from Vonville's silence after the trial court's evidentiary rulings silenced Vonville's other witnesses, justifies habeas corpus relief for the petitioner. Therefore it is recommended that this petition for writ of habeas corpus be granted.

## III.  <u>Discussion</u>

### A.  <u>Habeas Relief Under 28 U.S.C. § 2254 – The Legal Standard</u>

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State . . . .

28 U.S.C. § 2254.

As the statutory text implies, the standard that state prisoners must meet in order to obtain habeas corpus relief is exacting. See <u>Dunn v. Colleran</u>, 247 F.3d

450, 468 (3d Cir. 2001) ("Habeas corpus . . . is an 'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." (quoting Calderon v. Coleman, 525 U.S. 141, 146 (1998))). Indeed, federal courts may consider a § 2254 petition "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas relief therefore does not lie for violations of state law that lack a constitutional dimension. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004).

The same principles that inform the standard of review in habeas petitions also call upon federal courts to give appropriate deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. This deference mandated by § 2254 has two critical components. Under § 2254(d), habeas relief is not available for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

Applying this deferential standard of review, federal courts frequently decline

invitations by habeas petitioners to second-guess the considered views of the state

trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338-39 (2006); see

also Warren v. Kyler, 422 F.3d 132, 139-40 (3d Cir. 2006); Gattis v. Snyder, 278

F.3d 222, 228 (3d Cir. 2002).

Noting that these standards are intentionally difficult to meet, the Supreme

Court has underscored that the language "clearly established Federal law" for

purposes of § 2254(d)(1) encompasses only the holdings of Supreme Court

decisions, and that an "unreasonable application of those holdings must be

objectively unreasonable, not merely wrong; even clear error will not suffice."

White v. Woodall, 572 U.S. 415, 419, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698

(2014). In addition, the determination of a factual issue by a state court is

presumed to be correct unless the petitioner can show by clear and convincing

evidence that this factual finding was erroneous. 28 U.S.C. § 2254(e)(1). This

presumption in favor of the correctness of state court factual findings has been

extended to a variety of factual findings made in the course of criminal

proceedings. See Demosthenes v. Baal, 495 U.S. 731, 734-35 (1990) (deferring to

state court's finding of petitioner's competency); Maggio v. Fulford, 462 U.S. 111,

117 (1983) (per curiam) (same). Factual findings in these regards must be presumed to be correct unless the petitioner can show by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1).

### B.      Procedural Standards for Habeas Relief

#### 1.      Exhaustion of State Remedies

In response to the instant habeas petition, the respondents argue that the petitioner's primary grounds for relief, the allegedly defective jury instructions and counsel's failure to object to these instructions, are not properly before this court because these claims were either not fairly presented to the state courts or procedurally defaulted due to an adequate and independent state court rule. State prisoners seeking relief under § 2254 must satisfy specific procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). "The exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review." Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will

refuse to entertain a petition for habeas corpus. <u>Whitney v. Horn</u>, 280 F.3d 240, 250 (3d Cir. 2002).

The United States Court of Appeals for the Third Circuit has noted that "'[f]air presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" <u>Holloway</u>, 355 F.3d at 714 (quoting <u>McCandless v. Vaughn</u>, 172 F.3d 255, 261 (3d Cir. 1999)); <u>see also</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . by invoking one complete round of the State's established appellate review process."). The Supreme Court has explained that "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. <u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid a federal court in its review of § 2254 petitions. <u>Walker v. Vaughn</u>, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden

of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. <u>Evans v. Court of Common Pleas</u>, 959 F.2d 1227, 1231 (3d Cir. 1992); <u>Santana v. Fenton</u>, 685 F.2d 71, 73-74 (3d Cir. 1982).

Although mandatory, the exhaustion requirement "turns on an inquiry into what procedures are 'available' under state law." <u>O'Sullivan</u>, 526 U.S. at 847. Under Pennsylvania law, a federal claim becomes exhausted once it is presented to the Pennsylvania Superior Court, either as a direct appeal from a state criminal conviction or as an appeal from a PCRA Court's denial of post-conviction relief. <u>See</u> <u>Lambert v. Blackwell</u>, 387 F.3d 210, 233 (3d Cir. 2004) (finding that review from the Pennsylvania Supreme Court is unavailable, and therefore not required, for purposes of exhausting state court remedies). Further, the exhaustion requirement is meant "to be applied in a commonsense fashion. The exhaustion requirement thus is satisfied when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some 'talismanic' recitation of specific constitutional clams." <u>Dunbar v. Eckard</u>, No. 1:15-CV-473, 2017 WL 6949811, at *7 (M.D. Pa. Nov. 7, 2017), <u>report and recommendation adopted</u>, No. 1:15-CV-00473, 2018 WL 447327 (M.D. Pa. Jan. 17, 2018). Likewise, a petitioner satisfies the exhaustion

requirement upon fairly presenting a claim to the state courts, even if the state courts do not address that claim. See Dye v. Hofbauer, 546 U.S. 1, 3 (2005) (per curiam) ("Failure of a state appellate court to mention a federal claim does not mean the claim was not presented to it."); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004) ("Even if a state court fails to rule on the merits of a claim, a properly presented claim will be considered exhausted.").

## 2. Procedural Default and the Martinez Exception to the Procedural Default Doctrine

The doctrine of procedural default serves as a corollary to the exhaustion requirement and provides a basis for a federal court to refuse to review a habeas claim. "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999) (quoting 28 U.S.C. § 2254(b)(1)(B)(i)). However, claims deemed exhausted because of a state procedural bar are procedurally defaulted . . . ." Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000). Thus, claims are procedurally defaulted where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule . . . ."

Coleman v. Thompson, 501 U.S. 722, 750 (1991). The adequacy of a state procedural rules depends on whether they are "'firmly established and regularly followed,' or . . . 'novel[ ]' and unforeseeable." Bronshtein v. Horn, 404 F.3d 700, 707 (3d Cir. 2005) (alteration in original) (citations omitted) (quoting Ford v. Georgia, 498 U.S. 411, 424 (1991); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 457 (1958)). The requirement that a state procedural rule be adequate and independent "ensures that federal review is not barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule." Bronshtein, 404 F.3d at 707.

"Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes 'cause' to excuse the default and actual 'prejudice' as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental 'miscarriage of justice.'" Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002). To demonstrate "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner satisfies the "prejudice" requirement by establishing that the trial was "unreliable or . . . fundamentally unfair" because of a violation of federal law. Lockhart v.

Fretwell, 506 U.S. 364, 372 (1993). Alternatively, the "fundamental miscarriage of justice" exception applies where the petitioner can make a credible assertion of actual innocence by producing new evidence to show "that constitutional error has resulted in the conviction of one who is actually innocent of the crime." Schlup v. Delo, 513 U.S. 298, 324 (1995). The burden lies with a petitioner to demonstrate circumstances that would serve to excuse a procedural default. See Sweger v. Chesney, 294 F.3d 506, 520 (3d Cir. 2002); see also Coleman, 501 U.S. at 750.

To the extent that the petitioner has failed to present before the state courts the jury instructions and related ineffectiveness claims he now asserts in his federal habeas petition, the petitioner cannot now go back and "fairly present" those claims in a subsequent PCRA petition because the time for him to bring a new PCRA petition has expired. See 42 Pa. Cons. Stat. § 9545(b)(1) (requiring a PCRA petition to be filed "within one year of the date the judgment becomes final"). Judgment becomes final at the conclusion of direct review, which includes discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking that review. 42 Pa. C. S. § 9545(b)(3); Commonwealth v. Owens, 718 A.2d 330 (Pa. Super. Ct. 1998). Here, because the petitioner's conviction became final well over a year ago,

any attempt to now go back and file a new PCRA petition would be barred as untimely under 42 Pa. C. S. § 9545(b).

"To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made," Anderson v. Harless, 459 U.S. 4, 6 (1982), as the petitioner "must have communicated to the state courts in some way that [the petitioner was] asserting a claim predicated on federal law." McCandless, 172 F.3d at 261. The Third Circuit has interpreted this requirement liberally, noting:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, "include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

Evans v. Court of Common Pleas, Delaware Cnty., Pa., 959 F.2d 1227, 1232 (3d Cir. 1992) (quoting Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir.

1982)).  Here, there is no indication that the principal issue first raised in this petition, the trial court's inadvertent but erroneous instruction that "[y]ou may infer any inference of guilt from the fact that [Vonville] did not testify in his own defense," and counsel's failure to object to this erroneous instruction, were ever presented at trial, on direct appeal in state court, or in state post-conviction relief act proceedings and appeals.  Therefore, in the absence of some exception to the procedural default doctrine, these issues present paradigms of defaulted legal claims. However, for reasons more particularly described below, we find that application of the Supreme Court's decision in Martinez v. Ryan, 566 U.S. 1 (2012) to the facts of this case  overcomes the Commonwealth's exhaustion and procedural default arguments.

In Martinez, the Supreme Court held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez, 566 U.S. at 17. Martinez limited its holding to cases where state law provided that "claims of ineffective assistance of trial counsel *must* be raised in an initial-review collateral proceeding . . . ." Id. The Supreme Court has since extended the holding of Martinez to apply not only to cases where state law expressly prohibits bringing ineffective assistance

claims on direct appeal, but also where the "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." Trevino v. Thaler, 569 U.S. 413, 429 (2013).

In considering these directives in light of Pennsylvania's procedural framework for bringing ineffective assistance claims, the Third Circuit has determined that, pursuant to Martinez, ineffective assistance of PCRA counsel may serve as "cause" to excuse a procedural default for failing to exhaust underlying ineffective assistance of trial counsel claims before a Pennsylvania PCRA Court. See Cox v. Horn, 757 F.3d 113, 124 n.8 (3d Cir. 2014). In order for Martinez to apply, and serve as cause to excuse a petitioner's procedural default of a claim, a petitioner must show three things: "(1) that the procedural default was caused by either the lack of counsel or ineffective counsel on post-conviction review; (2) that this lack or ineffectiveness of counsel was in the first collateral proceeding when the claim could have been heard; and (3) the underlying claim of ineffective counsel is 'substantial.'" Richardson v. Superintendent Coal Twp. SCI, -- F.3d --, 2018 WL 4701949, at *7 (3d Cir. Oct. 2, 2018) (quoting Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014)).

Under <u>Martinez</u>, the failure of a federal habeas petitioner's counsel to raise a claim in an initial-review collateral proceeding may constitute cause if (1) PCRA counsel's failure itself constituted ineffective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." <u>Martinez</u>, 566 U.S. at 14; <u>Glenn v. Wynder</u>, 743 F.3d 402, 410 (3d Cir. 2014). "Under <u>Strickland</u>, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and that the defendant was prejudiced by that performance." <u>Marshall v. Hendricks</u>, 307 F.3d 36, 85 (3d Cir. 2002).

The <u>Martinez</u> framework applies only to "substantial claims" of trial counsel's own ineffectiveness.  A claim that trial counsel was ineffective will be deemed to be substantial under this test if the petitioner shows that "the claim has some merit," as would be required for the issuance of a certificate of appealability from an unfavorable decision.  <u>Cox</u>, 757 F.3d at 119.  A claim has merit under this standard so long as "reasonable jurists could debate" its merits, or "it deserve[s] encouragement to proceed further."  <u>Richardson</u>, -- F.3d --, 2018 WL 4701949, at *7 (quoting <u>Preston v. Superintendent Graterford SCI</u>, -- F.3d --, 2018 WL

4212055, at *8 (3d Cir. Sept. 5, 2018)).  Although Strickland's two-step analysis serves as a guide, the Third Circuit has instructed that courts must "remain mindful that the 'substantiality' inquiry 'does not require full consideration of the factual or legal bases adduced in support of the claims.'"  Preston, -- F.3d -- ,  2018 WL 4212055, at *8.  Provided that a petitioner can make a persuasive showing that his ineffectiveness claim pertaining to his trial counsel is substantial under this standard, the proof of substantiality is also enough to show prejudice resulting from PCRA counsel.  Workman v. Superintendent Albion SCI, -- F.3d --, 2018 WL 4324238, at *5-6 (3d Cir. Sept. 11, 2018).  Accordingly, "substantiality is a notably lower standard than the proof of prejudice required by Strickland's second prong."  Richardson, -- F.3d --, 2018 WL 4701949, at *8 (citing Workman, -- F.3d --, 2018 WL 4324238, at *5).  Indeed, even in cases where there has been a "less-developed factual record, a petitioner could qualify for the Martinez exception and possibly an evidentiary hearing even if he did not yet have enough evidence to prove prejudice under Strickland."  Richardson, -- F.3d --, 2018 WL 4701949, at *8.

A substantial claim regarding trial counsel's ineffectiveness alone is not sufficient to excuse procedural default under Martinez.  In addition, Martinez holds that post-conviction counsel must be "ineffective under the standards of Strickland

v. Washington" in order to excuse the procedural default of the underlying claim.

Workman, -- F.3d --, 2018 WL 4324238, at *4 (quoting Martinez, 566 U.S. at 14).

Strickland contains two prongs, one being "performance" and the other being

"prejudice."  Bey v. Superintendent Greene SCI, 856 F.3d 230, 238 (3d Cir. 2017).

Under Strickland:

> To prove ineffective assistance of counsel . . . a petitioner must prove
> "(1) that his counsel's performance was deficient, that is, it fell below
> an objective standard of reasonableness, and (2) that counsel's
> performance prejudiced his client," i.e., that "there is a reasonable
> probability that, but for counsel's unprofessional errors, the result of
> the proceeding would have been different."  We have previously
> referred to these as the "performance" and "prejudice" prongs of the
> Strickland test.

Id.

In the ordinary case, to show that counsel's deficient performance caused

prejudice under Strickland, the petitioner must demonstrate that state post-

conviction counsel "could have obtained a different result had he presented the

now-defaulted ineffective-assistance-of-trial-counsel claim.  In other words, he

must prove the merits of his underlying ineffective-assistance-of-trial-counsel

claim in order to excuse the procedural default of that claim and obtain

consideration on the merits."  Workman, -- F.3d -- , 2018 WL 4324238, at *5.

When considered in the context of a Martinez argument, however, the analysis is

more relaxed.  Id. ("[T]he underlying ineffective-assistance-of-trial-counsel claim

must be evaluated under a standard less exacting than <u>Strickland</u> prejudice.").
Finally, a finding of cause and prejudice under <u>Martinez</u> "does not entitle the
prisoner to habeas relief.  It merely allows a federal court to consider the merits of
a claim that otherwise would have been procedurally defaulted."   <u>Id.</u> (quoting
<u>Martinez</u>, 566 U.S. at 17).

In sum, under <u>Martinez</u>, if a petitioner "shows that his underlying
ineffective-assistance-of-trial-counsel claim has some merit and that his state post-
conviction counsel's performance fell below an objective standard of
reasonableness, he has shown sufficient prejudice from counsel's ineffective
assistance that his procedural default claim must be excused under <u>Martinez</u>."
<u>Workman</u>, -- F.3d --, 2018 WL 4324238, at *7.  And if procedural default is
excused under this framework, then a federal court sitting in habeas review must
consider the petitioner's otherwise procedurally defaulted claims *de novo* because
the state courts did not consider the claims on their merits.  <u>Bey</u>, 856 F.3d at 236
(citing <u>Bronshtein v. Horn</u>, 404 F.3d 700, 710 n.4, 715 (3d Cir. 2015)).

### C.   <u>Vonville's Procedural Defaults on His Jury Instruction Claim Should Be  Excused</u>

Applying the procedural default excuse requirements prescribed by <u>Martinez</u>
and it progeny to this case we have little difficulty in concluding that Vonville's

claims relating to the failure of his trial counsel to object to the jury instruction which stated that "[y]ou may infer any inference of guilt from the fact that he did not testify in his own defense," states a claim which survives any procedural default argument and should be considered on its merits. As we have noted, under Martinez, the failure of a federal habeas petitioner's counsel to raise a claim in an initial-review collateral proceeding may constitute cause if (1) PCRA counsel's failure itself constituted ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." Martinez, 566 U.S. at 14. In this context, a claim that trial counsel was ineffective will be deemed to be substantial if the petitioner shows that "the claim has some merit," a standard of review which equates with the standard for the issuance of a certificate of appealability from an unfavorable decision, Cox, 757 F.3d at 119, which holds that a claim is substantial if "reasonable jurists could debate" its merits, or "it deserve[s] encouragement to proceed further." Richardson, -- F.3d --, 2018 WL 4701949, at *7.

While we will discuss the merits of this claim in greater detail below, suffice it to say that the failure of trial counsel to object to an instruction which seemingly invites an adverse inference from the invocation of a constitutional right meets this

test and states a substantial ineffective assistance of counsel claim. Thus, the failure of trial counsel to identify, address and present this issue satisfies the benchmarks prescribed by Martinez for excusing what is otherwise a procedural default.

In addition, Martinez requires us to consider the performance of PCRA counsel and holds that post-conviction counsel must be "ineffective under the standards of Strickland v. Washington" in order to excuse the procedural default of the underlying claim.  Workman, -- F.3d --, 2018 WL 4324238, at *4 (quoting Martinez, 566 U.S. at 14). This Strickland analysis that is applied to post-conviction counsel has two elements: a deficient performance by counsel and prejudice. As we have noted, and discuss in greater detail below, for the past half century it has been clear beyond peradventure that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence *or instructions by the court that such silence is evidence of guilt*." Griffin v. California, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L. Ed. 2d 106 (1965)(emphasis added). Given this settled case law, the failure of trial and PCRA counsel to identify this issue falls below the standards prescribed by

Strickland and the first element of this Strickland test is met here for purposes of excusing Vonville's procedural default.

We also find that the failure of PCRA counsel to preserve this jury instruction issue meets the prejudice benchmark prescribed by Martinez, which simply requires a petitioner to "show[] that his underlying ineffective-assistance-of-trial-counsel claim has some merit and that his state post-conviction counsel's performance fell below an objective standard of reasonableness." Once the petitioner has met this quantum of proof he "has shown sufficient prejudice from counsel's ineffective assistance that his procedural default claim must be excused under Martinez." Workman, -- F.3d --, 2018 WL 4324238, at *7.

In sum, finding that Vonville's claims relating to this failure to object to the court's jury instruction meets the exacting standards set by law for excusing a procedural default, we recommend that the claim be considered on its merits.

### D.   **Merits Consideration**

Turning to a merits consideration of this claim, we find that Vonville has stated a meritorious claim of ineffective assistance of counsel which warrants federal habeas corpus relief. In examining this issue we begin with the trial court's instruction, as it pertained to Vonville's exercise of his Fifth Amendment rights. On this score, the trial transcript, which is the only verifiable record of these

proceedings, plainly indicates that trial judge instructed the jury regarding Vonville's exercise of his Fifth Amendment rights in a fashion which was antithetical to those rights, advising the jury that:

> The Defendant did not testify. It is entirely up to the Defendant in every criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. *You may infer any inference of guilt from the fact that he did not testify in his own defense.*

> (Doc. 35-21, p. 78)(emphasis added.)

The Fifth Amendment protection against self-incrimination is one of the core values enshrined in our Constitution. It has long been held that a logical concomitant of this right is that criminal defendants may not be punished for invoking that Constitutional guarantee and "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence *or instructions by the court that such silence is evidence of guilt*." Griffin v. California, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L. Ed. 2d 106 (1965)(emphasis added).

For their part, the Respondents do not seriously quarrel with this black letter legal proposition. They do, however, invite us to speculate that the Constitutional error reflected in the trial transcript may not have in fact occurred, suggesting

instead that the transcript erroneously transcribed the model jury instruction relating to a defendant's silence at trial.

There are at least three problems with this argument from our perspective. First, when considering habeas petitions filed under §2254 we are specifically enjoined to rely upon the state court record. Indeed, the necessity of such reliance upon the state court record of proceedings is the very reason that §2254 imposes full exhaustion and procedural default requirements upon petitioners. Respondents' argument would turn this principle on its head, and have us discount what is for the Commonwealth an inconvenient truth; namely, that the transcript plainly shows an error, albeit accidental, of constitutional dimension.

Further, to the extent that we are asked to ignore the language of the trial transcript, and substitute a different interpretation for the words actually used by the court, we must be provided some evidentiary basis for doing so. Here, Respondents proffer nothing beyond their speculation that the transcript must be in error. Such an argument is essentially an invitation for speculation, a path we cannot follow given what the transcript actually reveals.

Finally, Respondents' argument that the transcript must simply reflect an inaccurate rendition of the standard jury instruction is belied by the fact that the instruction actually given, as reflected in the trial transcript, varies materially on a

number of scores from the standard Pennsylvania jury instruction. As Vonville aptly notes, the model instruction provides as follows:

> It is entirely up to the defendant in every criminal trial whether or not to testify. [He][She] has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt, or any other inference adverse to the defendant, from the fact that [he] [she] did not testify.

In contrast the transcript of Vonville's trial reveals that the trial judge instructed the jury in terms that differed significantly from this model instruction, advising the jury that:

> The Defendant did not testify. It is entirely up to the Defendant in every criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. *You may infer any inference of guilt from the fact that he did not testify in his own defense.*

> (Doc. 35-21, p. 78)(emphasis added.)

Given the material variances between the model instruction and what the trial transcript reflects, it strains credulity to assert that the court reporter somehow accidentally transmogrified the standard instruction into the words set forth in the transcript. Instead, we are constrained to accept the jury instruction as depicted in the transcript as the actual guidance given the jury.

Respondents also briefly argue that any error in this passage of the instruction was cured when the instruction was read and considered as a whole. We

agree that under both state and federal law we must consider the instruction as a whole when determining whether any instruction was prejudicially erroneous. See Estelle v. McGuire, 502 U.S. 62, 72 (1991); United States v. Flores, 454 F.3d 149, 160 (3d Cir. 2006); Commonwealth v. Saunders, 602 A.2d 816, 819 (Pa. 1992); see also Commonwealth v. Prosdocimo, 578 A.2d 1273, 1276 (Pa. 1990). While we agree that this is the analytical lens through which the jury instructions should be viewed, applying that lens we conclude that the instruction given here was both plainly wrong and manifestly prejudicial.

This case was presented to the jury with a single crucial factual issue for its determination—the state of Vonville's mind at the time he killed Hernandez. Through a series of missteps defense counsel presented no evidence whatsoever on this crucial question at trial. The jury instructions, read as a whole, focused the jury's attention on issues of Vonville's intent and state of mind through their emphasis upon concepts such as pre-meditation, malice or the killing of another in the heat of sudden passion. Those instructions, having focused the jury on the state of Vonville's mind, in a case where Vonville had presented no evidence concerning his state of mind, then in their sole reference to Vonville's Fifth Amendment right to remain silent told the jurors that: "You may infer any inference of guilt from the fact that he did not testify in his own defense." In short,

when this passage from the jury instruction is viewed in the context of the trial presentation and the instructions as a whole, the prejudice that flowed from this fundamental misstatement of the law is revealed with even greater clarity. The instructions told the jury to focus on Vonville's intent, and then informed the jurors that they may infer a bad intent from Vonville's silence at trial.

Given the plain, and plainly prejudicial, error in this jury instruction, we also find that the first element of the Strickland test for ineffectiveness of counsel is met here, in that trial counsel's failure to object to this instruction fell below an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984).  As we have observed at the time of Strickland's trial it was well-settled for decades that "the Fifth Amendment, . . . , forbids either comment by the prosecution on the accused's silence *or instructions by the court that such silence is evidence of guilt*." Griffin v. California, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L. Ed. 2d 106 (1965)(emphasis added). Given this settled legal tenet, no tactical reason can exist for counsel to permit an instruction which violates the Constitution, and invites an inference of guilt based upon constitutionally protected conduct, and the failure to object to this plainly incorrect instruction falls below any objective standard of reasonableness.

We are also constrained to note that this was not the only instance in which trial counsel's performance was found to be deficient. When the state PCRA court examined the failure of trial counsel to file a notice of intent to present expert testimony regarding  Vonville's state of mind, that state court also observed that: "We also highly doubt that trial counsel's conduct was reasonable." (35-18, p. 7.)

While the state courts may have concluded that this unreasonable failure to file this notice, in isolation, was not sufficiently prejudicial to warrant post-conviction relief, it did so without benefit of knowledge that other material shortcomings by counsel occurred at trial, and trial counsel allowed the court to instruct the jury that it may draw an adverse inference from the defense's silence. Armed with this additional, material information, we conclude in the factual context of this case that Vonville has also satisfied the second element of an ineffective assistance of counsel claim, in that he has demonstrated that prejudice flowed from the deficient performance of counsel. Under Strickland  in order to make a showing of prejudice sufficient to justify habeas corpus relief: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." <u>Strickland v. Washington</u>, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984).

Viewed in the factual context of this case, we find that the prejudice which flowed from counsel's errors was manifest. By the time of trial, counsel's failure to timely file a notice of intent to rely upon expert testimony had precluded the defense from presenting an expert witness to testify to the only contested issue in this case, Vonville's state of mind. At trial this earlier error by counsel compounded itself when counsel was also barred from presenting lay testimony regarding Vonville's distraught and suicidal bent of mind on the day of this killing. Thus, counsel's errors, and the rulings which flowed from those errors, silenced the defense on the pivotal issue in this case, the question of criminal intent.

Having been struck mute at trial by counsel's errors, Vonville then elected to exercise his right to remain silent. However, through trial counsel's inaction, Vonville was then penalized for exercising this right when the court instructed the jury that: "You may infer any inference of guilt from the fact that he did not testify in his own defense." In a case which turned entirely on Vonville's state of mind, at a trial where Vonville presented no evidence regarding his mental state due to counsel's errors, and in a setting where the issue of his mental state was something that was singularly within Vonville's knowledge, this instruction permitted the jury

to infer criminal intent from Vonville's constitutionally protected conduct. Yet, notwithstanding these errors, it is evident that the jury struggled with the question of intent, sought further instructions from the court on that issue, and then returned a verdict based upon this issue which was less than the prosecution sought. On these facts, we conclude that this ineffectiveness by counsel was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). In short, we find that these error combined to create "a probability sufficient to undermine confidence in the outcome" of this trial. Id.[5]

Having found that Vonville received unconstitutionally ineffective assistance of counsel in this case, we conclude that Vonville is entitled to relief in

---

[5] A single example suffices to show the prejudice which may have flowed from the failures of counsel to preserve these mental state defenses, and prevent the trial judge from instructing the jury that it could draw an adverse inference regarding intent from Vonville's silence. Vonville was convicted of third-degree murder. The maximum penalty for that offense is 40 years in prison, and Vonville received a sentence of 20-to-40 years imprisonment. See 18 Pa.C.S. §1102(d). We know from the jury's deliberations and questions that, despite the failings of trial counsel, some jurors were debating whether this conduct fell under the lesser offense of manslaughter. The maximum penalty for manslaughter was 20 years imprisonment, half the sanction for third degree murder and half the maximum sentence actually imposed here. See 18 Pa.C.S. §1103. At a minimum, these cumulative errors by counsel have undermined our confidence that Vonville had a full and fair opportunity to fully present this mitigating mental state at trial.

the form of an order conditionally granting the petitioner's petition for writ of habeas corpus, vacating this conviction and sentence and directing the Commonwealth to either retry Vonville within 120 days,[6] or release the petitioner.

## IV.   Recommendation

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be CONDITIONALLY GRANTED, that Vonville's conviction and sentence be vacated, and that the Commonwealth be directed to either retry the petitioner within 120 days, or release the petitioner.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and

---

[6] On this score we note that when allowing habeas corpus relief in the form of a new trial it has been held that a "120–day period . . . set for re-trial was 'eminently reasonable.' ... (noting that 120 days comports with Pennsylvania's Rule of Criminal Procedure 600(D))." Vazquez v. Wilson, 348 F. App'x 733, 734 (3d Cir.2009). See Slutzker v. Johnson, 393 F.3d 373, 390 (3d Cir.2004) (120 days); Holloway v. Horn, 355 F.3d 707, 730 (3d Cir.2004) (120 days). See also Gibbs v. Frank, 500 F.3d 202, 207 (3d Cir.2007) (collecting cases).

all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of November, 2018.

_/s/  Martin C. Carlson_____
Martin C. Carlson
United States Magistrate Judge