# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHILIP J. VONVILLE,

    Petitioner,

    v.

JOHN KERESTES,

    Respondents.

NO. 3:14-CV-1582

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Report and Recommendation (Doc. 37) of Magistrate Judge Martin C. Carlson on the Petition and Amended Petition for Writ of Habeas Corpus (Doc. 1; Doc. 27; Doc. 30) pursuant to 28 U.S.C. § 2254 filed by Petitioner Philip Vonville ("Vonville"). Vonville contends, *inter alia*, that his trial counsel was ineffective in failing to object at trial and to raise on direct appeal that his rights under the Fifth Amendment to the United States Constitution were violated when the trial judge instructed the jury that they could infer guilt from the fact that he did not testify. Vonville further argues that although this claim was not raised in his initial-review collateral proceeding in state court, that failure is excused pursuant to *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d (2012) because his post-conviction counsel was ineffective in failing to identify and raise this claim.

Agreeing with Vonville, Magistrate Judge Carlson concludes that there exists cause to overcome the procedural default of the claim that trial counsel was ineffective for failing to object to the unconstitutional jury instruction. Magistrate Judge Carlson further finds that Vonville satisfies the requirements of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) on the underlying claim. Thus, Magistrate Judge Carlson recommends that Vonville's petition for writ of habeas corpus be granted.

Respondent (the "Commonwealth") timely objected to the Report and

Recommendation. While acknowledging that the transcript reflects that the jury was instructed at trial that they could infer that Vonville was guilty because he did not testify, the Commonwealth insists that the jury was not actually charged in such a manner and that the transcript instead contains a scrivener's error. The Commonwealth also disputes that the procedurally defaulted claim meets the requirements of *Martinez*.

As will be explained below, Vonville is entitled to relief pursuant to 28 U.S.C. § 2254. Specifically, because Vonville's initial post-conviction counsel was ineffective and his underlying ineffective assistance of trial counsel claim has some merit, his procedural default of the underlying claim is excused pursuant to the Supreme Court's decision in *Martinez*. Moreover, because he makes the necessary showing under *Strickland* that trial counsel's performance was objectively unreasonable and he suffered prejudice as a result, Vonville's § 2254 petition will be conditionally granted and the Commonwealth will be directed to retry him within 120 days or release him from custody.

## I. Background

### A. Factual Background.

Vonville was found guilty of third degree murder for the death of Christopher Hernandez ("Hernandez") and sentenced to a 20-to-40 year term of imprisonment following a two day jury trial in the Court of Common Pleas of Monroe County, Pennsylvania in July 2010.

The facts as reflected in the trial transcript include the following:

Vonville and Brittney Hartley ("Hartley") met in the summer of 2007 when she was in high school and the two began a romantic relationship near the end of that year, at which time Vonville moved in with Hartley and her parents. (*See* Doc. 27-1, 21:4-22:2). In February 2009, Vonville and Hartley got engaged. (*See id*. at 24:5-11).

That May when she was nearing her high school graduation, Hartley enlisted in the Army, and she was scheduled to report for basic training on September 21,

2009. (*See id*. 24:23-25:4). During that summer, Vonville and Hartley's relationship began to deteriorate, as they constantly fought and were unable to get along. (*See id*. at 25:9-13; 29:5-11). Vonville would often accuse Hartley of infidelity. (*See id*. at 29:12-25). He also threatened to kill her on more than one occasion if he caught her cheating. (*See id*. at 30:4-10).

Hartley first met Hernandez when she was in intermediate school. (*See id*. at 30:14-16). Hartley and Hernandez dated in high school, but they broke it off and he ended up moving to New York. (*See id*. at 30:25-31:2). Although Hartley remained in contact with Hernandez after he moved to New York, they were no longer romantically involved. (*See id*. at 31:10-18). Through August 2009, Hartley did not see Hernandez in-person. (*See id*. at 32:6-8).

On September 17, 2009, Hartley and Vonville went out for dinner. (*See id*. at 36:12-17). The dinner was quiet because Vonville was angry with her for going to New York earlier that week without him. (*See id*. at 37:2-7). Hartley saw Hernandez while she was there, but she did not tell this to Vonville because she knew he would get upset. (*See id*. at 37:8-14). The couple went home after dinner and a fight ensued after Vonville saw Hartley looking at a man's social media page. (*See id*. at 37:15-38:13). Hartley changed her social media password so Vonville could not check her account, which caused him to get angry. (*See id*. at 38:5-19). Hartley gathered her work clothing and tried to leave the house in a hurry, and as she did, Vonville chased her to the car, screaming and threatening to break the car's windows. (*See id*. at 38:20-39:20). Hartley was able to get away. (*See id*. at 41:5-7). Before she did, however, she broke up with Vonville and told him she was finished with the relationship. (*See id*. at 41:21-23).

After she left, Hartley went to Hernandez's house in New York for the night. (*See id*. at 41:8-13; 42:9-12). Hartley and Vonville texted that evening and she reiterated that the relationship was over. (*See id*. at 86:12-19). He wanted her to come home, but she refused. (*See id*.).

Hartley returned to her house the next day, September 18, 2009, after her mom called and asked her to come home. (*See id*. at 42:13-20). Hartley and Vonville began arguing again, and as she tried to leave, he pinned her against the wall. (*See id*. at 43:3-4). Hartley pushed Vonville away and left the house, planning to stay at a friend's house since Vonville had nowhere else to go. (*See id*. at 43:5-22). After she left the house, Hartley closed out her bank account she held jointly with Vonville. (*See id*. at 43:24-44:14).

Later that evening, Hartley's friend threw a surprise party for her at her house. (*See id*. at 46:7-21). Hartley and her friend left the party to pick up some items from a convenience store. (*See id*. at 46:22-47:2). Hernandez was at the store when Hartley got there, and he returned with them to the party. (*See id*. at 47:1-10).

About 1:30 in the morning, Hartley recalled that she had left a bag at her house, so she decided to retrieve it while she believed Vonville would be at work. (*See id*. at 47:25-48:10). Hartley had been drinking and could not drive, so she accepted Hernandez's offer to take a ride with him in her car. (*See id*. at 48:11-21).

Hartley and Hernandez arrived at her house at a little past 2:00 in the morning. (*See id*. 48:22-49:8). They went in the house for a short time, and as they prepared to leave, Vonville returned home. (*See id*.). Vonville introduced himself to Hernandez, and then Hartley and Hernandez left the house and returned to the party. (*See id*. at 49:20-50:9).[1]

Late morning on September 19, 2009, Hartley's mom called her and asked her to come home and talk with Vonville because he was upset. (*See id*. at 52:9-17). Hernandez was with her at the time and he wanted to go with her, but Hartley declined his invitation. (*See id*. at 52:24-53:3).

---

[1]    There is some suggestion in the record that Vonville and Hernandez were in contact via text message before or around the time of this encounter. (*See* Doc. 27-2, 46:9-47:15, 62:19-63:19, 113:1-17, 136:20-137:7; *see also* Doc. 45, Ex. "A", 4-5, 17-19).

4

Hartley eventually returned to her house by herself. (*See id*. at 52:13-23). Hartley first observed her mother looking very upset before she saw Vonville and the two began arguing again. (*See id*. at 58:7-59:9). Vonville then proceeded to carry some of his personal belongings and clothing outside of the house and throw them in a burning barrel. (*See id*. at 59:10-14, 62:21-63:1). Hartley did not follow Vonville the entire way to the barrel, and at that point she saw that Hernandez had pulled up to the house in his truck. (*See id*. at 63:2-17). Hartley was surprised that Hernandez came to the house. (*See id*. at 63:16-24).

Hartley and Vonville continued to argue and he cursed her out. (*See id*. at 64:1-18). Vonville then went silent, and as Hartley turned to look at him, his hand went to his hip, he pulled out a knife, and ran towards Hernandez's truck. (*See id*. at 65:4-12). At that point, Hartley saw Hernandez had his head down in his truck looking at something and she could hear his music. (*See id*. at 66:22-67:2). Hartley got in front of Vonville and tried to push him away from the truck and told him to stop. (*See id*. at 67:7, 69:6-21). Vonville shoved Hartley out of the way and tried to stab Hernandez through the open driver's side window. (*See id*. at 69:24-71:2). Hernandez jumped from the driver's side to the passenger's side of the truck. (*See id*. at 71:3-5).

Vonville proceeded to run around the bed of the truck to the passenger side window that was closed. (*See id*. at 72:3-9). Hartley saw Vonville break the window with the knife and she heard Hernandez scream. (*See id*. at 72:16-22). Hartley opened the door of the truck to get Hernandez and she saw him bleeding from his side. (*See id*. at 73:5-18).

At that point, Vonville started yelling at Hartley again before he stabbed himself twice in the stomach with the knife, causing him to fall to the ground. (*See id*. at 73:24-75:2). Vonville got up and ran to the house. (*See id*.). Hartley called 911. (*See id*. at 74:21-25).

Vonville was interviewed by police twice, once on September 19, 2009 and once on September 20, 2009, while he was at the Lehigh Valley Hospital. (*See id*. at

112:5-13).  Vonville gave a recorded statement to police both days.  (*See id*. at 112:22-116:18).  Hernandez died from a stab wound to the abdomen.  (*See* Doc. 27-2, 11:18-21).

**B.  Trial Court Proceedings.**

Vonville was charged with an open count of criminal homicide for Hernandez's death on September 20, 2009.  (*See* Doc. 35-6, *generally*).  Pre-trial, Vonville's trial counsel was granted leave of court to obtain a psychiatric examination of her client.  (*See* Doc. 35-9, 1).  Trial counsel subsequently received an extension to analyze that report, but she was instructed that she was to file pre-trial motions within thirty (30) days of receipt of the report and failure to do so would constitute a waiver.  (*See id*. at 2).  The psychiatric report from Dr. Ilan Levinson concluded that while "the insanity defense could not be argued," Vonville "certainly [met] the criteria for diminished capacity and the status of guilty but mentally ill."  (Doc. 35-13, 2 n.3).

Trial counsel, however, failed to timely file a notice pursuant to Pennsylvania Rule of Criminal Procedure 568 of intent to offer the defense of insanity or mental infirmity.  (*See* Doc. 35-8, *generally*).  As a result, the Commonwealth filed a motion *in limine* to preclude Vonville from offering or referencing at trial his alleged insanity or mental infirmity, as well as to preclude Vonville from offering Dr. Levinson or any other mental health professional from testifying at trial.  (*See id*. at 2-5).

The trial judge granted the Commonwealth's motion *in limine* by Order dated June 22, 2010 Order, which stated: "Defendant shall not offer into evidence, nor reference in any way at trial the alleged insanity, mental infirmity, mental defect or mental condition of the Defendant.  It is further ORDERED that Dr. Ilan Levinson and/or any other mental health professional is precluded from testifying or offering evidence on behalf of Defendant."  (*Id*. at 1).

Trial started on July 12, 2010 and lasted for two days.  (*See* Doc. 27-1, *generally*; Doc. 27-2, *generally*).  After the close of the Commonwealth's case, Vonville attempted to call Hartley's mother as a witness to support his position that

he was depressed and suicidal at the time the offense was committed. (*See* Doc. 27-2, 29:5-11). As a result, Vonville's "state of mind was such that he could not formulate an intent for malice." (*Id*.). In the words of Vonville's trial counsel, such evidence was "pretty key." (*Id*. at 29:23). The Commonwealth objected to that testimony on the basis that it was barred by the trial court's June 22, 2010 Order. (*See id*. at 29:12-20). In that regard, Vonville's trial counsel agreed that "[t]he sole purpose" of the proposed testimony would be that Vonville "was acting crazy like he was going to kill himself." (*Id*. at 31:10-18). Given that, the trial judge barred Hartley's mother from testifying. (*See id*. at 31:19-20). In light of that decision, Vonville did not call any witnesses, nor did he testify on his own behalf. (*See id*. at 31:22; 40:23-43:13).

Following closing arguments, the trial court delivered its charge to the jury. The trial court instructed the jury on first degree murder, third degree murder, and voluntary manslaughter. (*See id*. at 67:14-76:18). Thereafter, the jury was instructed as follows:

> The Defendant did not testify. It is entirely up to the Defendant in every criminal trial whether or not to testify. He has an absolute right found on the Constitution to remain silent. *You may infer any inference of guilt from the fact that he did not testify in his own defense*.

(*Id*. at 78:15-20 (emphasis added)). At the conclusion of the instructions, counsel was asked if they had any "additions or corrections," to which Vonville's counsel indicated she was "satisfied" and the Commonwealth had none. (*Id*. at 85:14-16).

The jury ultimately returned a guilty verdict on the third degree murder charge. (*See id*. at 91:5-25).[2]

---

[2]    The trial transcripts for both July 12, 2010 and July 13, 2010 contain a certification from the court reporter certifying that "the proceedings and evidence are contained fully and accurately in the notes taken by me at the hearing in the within cause, and that the foregoing is a correct transcript of the same." (Doc. 27-1, p. 187; Doc. 27-2, p. 95). Both transcripts also bear the signature of the trial judge with a date of January 31, 2011 indicating that "the foregoing record of the proceedings upon the hearing of the within cause is hereby approved and directed

Vonville was sentenced to a 20-to-40 year term of imprisonment on September 30, 2010. (*See* Doc. 35-12, 1).

## C.  Direct Appeal.

Vonville, through trial counsel, filed a direct appeal to the Pennsylvania Superior Court. (*See* Doc. 35-4, *generally*). In his concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Vonville argued, *inter alia*, that the trial court erred as a matter of law in precluding any evidence of his state of mind at the time of the commission of the offense. (*See id*. at ¶ 8). Vonville also contended that the trial court abused its discretion with respect to his sentence. (*See id*. at ¶ 13).

The Superior Court denied Vonville's appeal on November 1, 2011. (*See* Doc. 35-14, *generally*). With respect to the claim that the trial court erred in excluding his witnesses pursuant to Pennsylvania Rule of Criminal Procedure 568, the Superior Court was not convinced, finding that the trial court did not abuse its discretion in granting the Commonwealth's motion *in limine* to exclude such evidence. (*See id*. at 6-7). The Superior Court further explained that this "point [was] moot" because a diminished capacity defense only "reduce[s] what would otherwise be first-degree murder to third-degree murder by negating specific intent to kill." (*Id*. at 7). Since the jury finding Vonville "guilty of third-degree murder rather than first-degree murder" established that the Commonwealth did not prove Vonville acted with a specific intent to kill, he "was not harmed by the preclusion of the diminished capacity evidence." (*Id*.). The Superior Court also rejected Vonville's challenges to his sentence. (*See id*. at 7-10).

## D.  PCRA Proceedings.

Vonville next commenced an action *pro se* pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9545, in June 2012. (*See* Doc. 35-

to be filed." (Doc. 27-1, p. 187; Doc. 27-2, p. 95).

13, *generally*). In the *pro se* petition, Vonville asserted that his trial counsel was ineffective by failing to timely file a pre-trial notice of mental infirmity. (*See id*.). Counsel was subsequently appointed, and his PCRA counsel raised the following issues: (1) trial counsel was ineffective in failing to timely file the diminished capacity defense notice; (2) trial counsel failed to investigate facts and circumstances demonstrating that Hernandez provoked Vonville prior to the offense; (3) trial counsel failed to investigate Vonville's psychiatric history; and (4) trial counsel failed to object to arcane language in the jury instructions. (*See* Doc. 35-2, *generally*).

On October 4, 2012, Vonville's PCRA petition was denied. (*See* Doc. 35-18, *generally*).[3] Addressing Vonville's first claim related to trial counsel's failure to file a Rule 568(b) notice, the PCRA judge noted that the claim was "of arguable merit" and that it was "highly doubt[ful] that trial counsel's conduct was reasonable." (*See id*. at 7). Nonetheless, "based on the nature of the excluded defense," the PCRA court did "not reach this question." (*Id*.). This was due to the fact that since a diminished capacity defense could only reduce first-degree murder to third-degree, Vonville's "verdict could not have been different even if his trial counsel had properly filed and presented a diminished capacity defense." (*Id*. at 7-8). Thus, the PCRA court concluded that Vonville was not prejudiced by trial counsel's performance on this point. (*See id*. at 8). The PCRA court also found Vonville's other claims of ineffectiveness unavailing. (*See id*. at 8-13).

Vonville appealed the denial of his PCRA petition to the Superior Court. (*See* Doc. 35-5, *generally*). In that appeal, Vonville argued, among other claims, that trial counsel was ineffective for failing to timely provide notice of a diminished capacity defense. (*See id*.). Vonville additionally argued that third-degree murder can be mitigated to voluntary manslaughter via a diminished capacity defense. (*See id*.; *see*

---

[3]     A different judge from the one that presided at trial presided over Vonville's PCRA proceeding.

*also* Doc. 35-7, 8).

The Superior Court denied Vonville's PCRA petition on September 9, 2013. (*See* Doc. 35-15, *generally*). Like the PCRA court, the Superior Court found that Vonville could not demonstrate that he was prejudiced by trial counsel's failure to file a Rule 568 notice. (*See id*. at 7). The Superior Court similarly found that Vonville failed to otherwise present a claim warranting relief under the PCRA. (*See id*. at 7-12).

Vonville filed a petition for allowance of appeal with the Pennsylvania Supreme Court on October 9, 2013. (*See* Doc. 35-11, *generally*). That petition was denied by the Pennsylvania Supreme Court on April 29, 2014. (*See* Doc. 35-10, *generally*).

**E.      The Instant Litigation.**

Vonville, proceeding *pro se*, then filed for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 on August 12, 2014. (*See* Doc. 1, *generally*). In his *pro se* petition, Vonville raised four claims: (1) PCRA counsel was ineffective for defaulting issues of trial counsel's ineffectiveness; (2) trial counsel was ineffective for failing to object to erroneous jury instructions; (3) trial counsel failed to object to jury instructions that shifted the burden of proof to him; and (4) trial counsel failed to object to the trial court's incorrect jury instructions on voluntary manslaughter. (*See id*.). The Commonwealth responded to the petition, disputing that Vonville was entitled to habeas relief. (*See* Doc. 15, *generally*).

Upon review of the petition, Magistrate Judge Carlson noted that Vonville raised a non-frivolous ineffectiveness claim against his trial and PCRA counsel with respect to his allegation that a jury instruction at trial was potentially unconstitutional. (*See* Doc. 22, 1-2). As such, Magistrate Judge Carlson appointed the Federal Public Defender's Office ("FPD") to represent Vonville in these proceedings and to file a counseled habeas petition with respect to the first two issues raised by Vonville in his *pro se* submission. (*See id*. at 4; *see also* Doc. 24, *generally*). Vonville, through the FPD, did so, and he also submitted a supplement to the petition raising two additional

grounds for relief: (1) trial counsel was ineffective when she failed to preserve his right to present evidence of his mental state at trial, which eliminated his ability to effectively present a heat of passion defense and reduce any culpability to voluntary manslaughter; and (2) trial counsel was ineffective in failing to investigate his mental health history and obtain psychiatric records from his childhood. (*See* Doc. 30, *generally*). The Commonwealth filed a response to the counseled petition and supplemental petition, (*see* Doc. 35, *generally*), and Vonville filed a reply thereto. (*See* Doc. 36, *generally*).

On November 5, 2018, Magistrate Judge Carlson issued the Report and Recommendation presently under review. (*See* Doc. 37, *generally*). Therein, Magistrate Judge Carlson recommends that although Vonville procedurally defaulted his claim that trial counsel was ineffective in failing to object to the trial court's jury instructions, that default should be excused because PCRA counsel was ineffective in failing to raise this issue in Vonville's initial-review collateral proceeding. (*See id*. at 19-20). In other words, Magistrate Judge Carlson concludes that Vonville meets the exception to the procedural default doctrine set forth by the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). (*See id*. at 26-38). And, on the merits of the underlying ineffectiveness of trial counsel claim, Magistrate Judge Carlson recommends that Vonville's petition be conditionally granted because he states a meritorious claim for federal habeas corpus relief. (*See id*. at 38-47). This is so, explains Magistrate Judge Carlson, because the trial transcript "plainly indicates that [the] trial judge instructed the jury regarding Vonville's exercise of his Fifth Amendment rights in a fashion that was antithetical to those rights[.]" (*Id*. at 39). As a result, counsel's failure to object to this instruction amounted to deficient performance under *Strickland*. (*See id*. at 43). Further, as to *Strickland*'s second requirement, the Magistrate Judge reasons that given the factual context of the case, the prejudice flowing from trial counsel's failure to object to this instruction was "manifest" especially when considered in connection with trial counsel's pre-trial

errors which prevented her from presenting evidence as to Vonville's state of mind at trial. (*See id*. at 43-46). Given those errors, Magistrate Judge Carlson opines that there is a reasonable probability that but for counsel's errors, the trial outcome would have been different. (*See id*. at 46). Accordingly, the Magistrate Judge recommends that a writ of habeas corpus be conditionally granted, the conviction and sentence be vacated, and the Commonwealth be ordered to retry Vonville within 120 days or release him. (*See id*. at 46-48).

The Commonwealth timely objected to the Report and Recommendation. (*See* Doc. 38, *generally*). In its first objection, "[t]he Commonwealth objects to the proposed finding that [trial counsel's] failure to present evidence regarding Petitioner's state of mind at the time he fatally stabbed the victim 'effectively silenced Vonville's witnesses who would have presented evidence concerning his state of mind, the only truly contested issue in this case.'" (*Id*. at 1). The Commonwealth's second objection challenges "the proposed finding that [the trial judge] instructed the jury they may infer guilt from the fact that [Vonville] did not testify." (*Id*. at 2). Lastly, the Commonwealth objects to "the proposed finding that [Vonville's] procedurally defaulted claims may proceed on their merits because they fit the narrow exception provided for in *Martinez* . . . ." (*Id*.).

Vonville filed a timely brief in opposition to the Commonwealth's objections. (*See* Doc. 45, *generally*). The time for the Commonwealth to respond to Vonville's opposition has passed without the filing of a reply brief. Accordingly, the Report and Recommendation and the Commonwealth's objections thereto are now ripe for review.

## II. Legal Standard

When objections to the magistrate judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). However, this only applies to the extent that a party's objections are both timely and specific; if objections are merely "general in nature," the court "need not conduct a *de novo*

determination." *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Indeed, the Third Circuit has instructed that "providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Id*. at 7. In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Uncontested portions of the Report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See*, *e.g.*, *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

### III. Discussion

Vonville's petition is brought pursuant to 28 U.S.C. § 2254, which provides statutory authority for federal courts to issue habeas corpus relief for persons in state custody. A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349, 158 L. Ed. 2d 64 (2004) (internal quotations marks omitted). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under

13

the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999). In Pennsylvania, a federal claim may be exhausted by presenting it to the Superior Court of Pennsylvania, either on direct appeal or, collaterally, under the PCRA, 42 Pa. C.S. § 9541, *et seq*. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

The exhaustion requirement "is not a mere formality. It serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights." *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986). Where a state prisoner has failed to exhaust the legal remedies available to him in state courts, federal courts typically will refuse to entertain a petition for habeas corpus. *See Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002).

Here, the parties and Magistrate Judge Carlson all agree that Vonville did not present his claim that the trial court's jury charge violated his constitutional rights at any level in state court. Thus, he has failed to exhaust this claim. *See Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002). However, "[w]hen a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). Significantly, though, "claims deemed exhausted because of a state procedural bar are procedurally defaulted. . . ." *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000) (citing *McCandless*, 172 F.3d at 260); *see also Martinez*, 566 U.S. at 9, 132 S. Ct. 1309 (under the doctrine of procedural default, "a federal court will not review the merits of claims, including

14

constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule," but "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions"). Further, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray v. Netherland*, 518 U.S. 152, 162, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996). Here again, there is no dispute that Pennsylvania's procedural bar on successive petitions is an independent and adequate state ground. *See Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014); *Whitney*, 280 F.3d at 251-52; *accord Martinez*, 566 U.S. at 9, 132 S. Ct. 1309 (Arizona bar on successive petitions is an independent and adequate state ground).

Notwithstanding the fact that he procedurally defaulted his claim regarding his trial counsel's ineffectiveness in failing to object to the trial judge's jury instructions, Vonville argues this default is excused based on the exception established by the Supreme Court in *Martinez*. (*See* Doc. 27, 9-21). The Commonwealth disputes that Vonville is entitled to relief under *Martinez*. (*See* Doc. 15-1, *generally*; Doc. 38-1, 11-12). Magistrate Judge Carlson recommends that the procedural default be excused. (*See* Doc. 37, 30-38). The Commonwealth objects to this recommendation. (*See* Doc. 38-1, 11-12).

## A.    Vonville's Procedural Default is Excused.

In *Martinez*, the Supreme Court considered "whether a federal habeas court may excuse a procedural default of an ineffective-assistance claim when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding." *Martinez*, 566 U.S. at 4, 132 S. Ct. 1309. Answering that question in the affirmative, the Court recognized a "narrow exception" to the procedural default doctrine: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a

claim of ineffective assistance at trial." *Id*. at 9, 132 S. Ct. 1309. The *Martinez* Court explained:

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Cf. Miller–El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

*Id*. at 13-14, 132 U.S. 1309; *see also id*. at 17, 132 U.S. 1309 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."). The Supreme Court underscored, however, that a finding of cause and prejudice "does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Id*. at 16, 132 U.S. 1309.

To establish the exception recognized in *Martinez*, a petitioner must show: "1) his procedurally defaulted ineffective assistance of counsel claim has 'some merit'; and that 2) his state-post conviction counsel was 'ineffective under the standards of

*Strickland v. Washington*.'" *Workman v. Superintendent Albion SCI*, - - - F.3d - - -, 2019 WL 545563, at *4 (3d Cir. Feb. 12, 2019) (footnotes and citations omitted); *accord Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 760 (3d Cir. 2018) ("To qualify for *Martinez*'s exception, a habeas petitioner must show (1) that the procedural default was caused by either the lack of counsel or ineffective counsel on post-conviction review; (2) that this lack or ineffectiveness of counsel was in the first collateral proceeding when the claim could have been heard; and (3) that the underlying claim of ineffective assistance of trial counsel is substantial."). In the matter *sub judice*, Vonville, for reasons discussed below, has made the necessary showing.[4]

First, Vonville's procedurally defaulted ineffective assistance of counsel claim related to trial counsel's failure to object to the jury instructions at trial is "substantial," *i.e.*, it has "some merit." *See Workman*, 2019 WL 545563, at *4. As the Third Circuit explained in *Workman*, to demonstrate that a claim has some merit, Vonville must "'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id*. (quoting *Miller-El v. Cockrell*, 537 U.S. at 336, 123 S. Ct. 1029). Of significance, this is "different from the standard applied on the merits under *Strickland v. Washington*," *id*., as "substantiality is a notably lower standard than the proof of prejudice required by *Strickland*'s second prong." *Richardson*, 905 F.3d at 764. This inquiry requires the petitioner to demonstrate only that his ineffective assistance of counsel claim against his trial counsel is substantial. *See id*.

---

[4] The Third Circuit has held that the exception recognized by *Martinez* applies to "states, like Pennsylvania, whose procedures do not strictly bar earlier review but typically do not afford an opportunity to raise ineffective-assistance claims until state habeas." *Richardson*, 905 F.3d at 760 (citing *Trevino v. Thaler*, 569 U.S. 413, 429, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013)).

Vonville meets this standard. It is "more than arguable," *id*., that Vonville had a Fifth Amendment right which forbids "instructions by the court that [an accused's] silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L. Ed. 2d 106 (1965). The trial transcript reflects that the jury was instructed in a manner expressly forbidden by *Griffin*: "You may infer any inference of guilt from the fact that he did not testify in his own defense." (Doc. 27-2, 78:18-20). That error "was apparent on the face of the record," but trial counsel did nothing to correct it. *Richardson*, 905 F.3d at 764. This constitutes performance that was "'clearly substandard under the first prong of *Strickland*[.]'" *Id*. (quoting *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 378 (3d Cir. 2018)). Vonville is thus entitled to have his procedural default excused if he can demonstrate that his post-conviction counsel was ineffective under the standards of *Strickland*.[5]

> To prove ineffective assistance of counsel under *Strickland v. Washington*, a petitioner must prove "(1) that his counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client," *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." We have previously referred to these as the "performance" and "prejudice" prongs of the *Strickland* test.

*Bey v. Superintendent Greene SCI*, 856 F.3d 230, 238 (3d Cir. 2017) (footnotes and citations omitted).

To show that his PCRA counsel's deficient performance caused prejudice, Vonville "must show that his state post-conviction counsel could have obtained a different result had he presented the now-defaulted ineffective-assistance-of-trial-counsel claim." *Workman*, 2019 WL 545563, at *5. Restated, Vonville "must prove the merits of his underlying ineffective-assistance-of-trial-counsel claim in order to

---

[5]  There is no dispute that trial counsel's ineffectiveness with respect to the Fifth Amendment violation was not raised in Vonville's PCRA petition, which was his first collateral review opportunity to raise that issue. *See Richardson*, 905 F.3d at 763.

excuse the procedural default of that claim and obtain consideration on the merits." *Id*. But, "what is important" "[a]t this stage" is "that the underlying ineffective-assistance-of-trial-counsel claim is 'substantial,' not that a petitioner has, in fact, been 'prejudiced' by trial counsel's deficient performance under *Strickland*." *Id*. Accordingly, if Vonville "shows that his underlying ineffective-assistance-of-trial-counsel claim has some merit and that his state post-conviction counsel's performance fell below an objective standard of reasonableness, he has shown sufficient prejudice from counsel's ineffective assistance that his procedural default must be excused under *Martinez*." *Id*. at *7 (citing *Preston*, 902 F.3d at 376).

Vonville's post-conviction counsel's performance was deficient. To meet this standard under *Strickland*, he "must show that his lawyer fell below an objective standard of reasonableness under prevailing professional norms." *Richardson*, 905 F.3d at 763 (citation and quotations omitted). While there is a "strong presumption" that an attorney's decision to pursue some claims and ignore others is a tactical choice, that presumption can be rebutted by "showing that counsel omitted significant and obvious issues . . . ." *Workman*, 2019 WL 545563, at *8. The challenged portion of the trial court's jury charge clearly instructed the jury that they could infer guilt from Vonville's exercise of his constitutional rights to remain silent. Yet, Vonville's PCRA counsel did not raise this issue in the PCRA proceeding. And, the record is devoid of "any strategic explanation for PCRA counsel's decision" to not include such a claim in Vonville's PCRA petition. *Preston*, 902 F.3d at 377. Vonville has therefore rebutted the presumption that his PCRA counsel made a strategic choice in omitting the claim relating to the issue of trial counsel's failure to object to the jury instructions that infringed on his Fifth Amendment rights. *Cf. Workman*, 2019 WL 545563, at *8. Vonville's PCRA counsel's performance was objectively unreasonable and deficient under the "performance" prong of *Strickland*. *See id*. Accordingly, like Magistrate Judge Carlson, I agree with Vonville that the procedural default of his ineffective assistance of trial counsel claim is excused and that he is entitled to have that claim

considered on the merits.

Before doing so, however, I pause to consider the Commonwealth's arguments on why this finding is incorrect. For the reasons below, none are convincing.

First, the Commonwealth while "not disput[ing] how the trial transcript literally reads," insists that this is a typographical or scrivener's error that does not accurately reflect what the jury was instructed at trial. (*See* Doc. 38-1, 7). This is so, the Commonwealth explains, because when the sentence at issue is read in context with other instructions given contemporaneously it is "inconceivable" that the trial judge would have provided such an instruction. (*See id*. at 8-10). To further support this point, the Commonwealth notes that the trial judge was in his thirtieth year on the bench at the time of trial. (*See id*. at 9). But, the experience of a trial judge does not render him or her immune from error. *See, e.g.*, *United States v. Waller*, 654 F.3d 430, 435 (3d Cir. 2011) (judge with thirty years on the bench improperly invited the jury to infer intent from the defendant's post-arrest, post-*Miranda* warnings silence).

Along that point, the Commonwealth cites to a different case where the trial judge instructed the jury as follows: "And the fact that they [sic] did not testify, you must not draw an inference of guilt or any other inference adverse to the Defendant simply to come from the fact that she did not testify." (38-1, 9). That the trial judge correctly instructed the jury in accordance with the defendant's Fifth Amendment rights in one case does not establish that he did the same at Vonville's trial.

The Commonwealth further argues that because no attorney for the Commonwealth or Vonville raised this issue at trial, direct appeal, or in the PCRA proceeding lends additional support to the view that the trial transcript contains a scrivener's error. Proceeding on the same theory as its argument with respect to the trial judge's experience, the Commonwealth insists that the attorneys involved at trial were "experienced" and "none would have allowed such an egregious error to pass without comment." (Doc. 38-1, 10). And, Vonville's PCRA counsel "certainly would

have raised such an obvious issue had it actually existed." (*Id*. at 11).[6] This argument fares no better. While experience is a factor that may be considered in determining whether he or she was ineffective, "the fact that an attorney has had a long career does not render 'inherently incredible' the claim that the attorney might give erroneous legal advice." *Huff v. United States*, 734 F.3 600, 608 (6th Cir. 2013); *accord LaGrand v. Stewart*, 133 F.3d 1253, 1275 (9th Cir. 1998) ("In considering a claim of ineffective assistance of counsel, it is not the experience of the attorney that is evaluated, but rather, his performance.").

Next, the Commonwealth requests that, insofar as I "feel[ ] bound by a literal reading of the transcript," it be given an opportunity for a hearing to present testimony from the trial attorneys regarding their recollections of the jury instructions. (Doc. 38-1, 11). While the Commonwealth indicates that the trial judge has since passed, it argues that Vonville's trial counsel and the two trial prosecutors could all be subpoenaed to provide testimony about their memories of the jury charge. (*See id*.). Such a hearing is not warranted for several reasons.

For one, the Commonwealth's position is entirely speculative. It does not cite or offer any evidence to support the claim that the transcript contains a scrivener's error. The Commonwealth simply posits - without record support - that none of the attorneys present at trial would have allowed such an error to occur without comment. This, though, is untethered to any evidence of record. Moreover, the Commonwealth does not even assert that the trial attorneys, if given the chance, would testify that the challenged passage in the trial transcript is wrong. Rather, the Commonwealth simply hopes (or speculates) that they will say as much.

---

[6]    This point makes little sense given that there is no record evidence suggesting that PCRA counsel attended Vonville's trial. Thus, PCRA counsel's primary source to determine whether such an error existed would be his review of the trial transcript, which "literally reads," in the Commonwealth's words, (Doc. 38-1, 7), an instruction that does not comport with the Fifth Amendment.

Vonville also rightly identifies a second reason why a hearing on this issue is not appropriate. (*See* Doc. 45, 9). In his *pro se* petition, one of the grounds identified by Vonville for relief was that the trial court instructed the jury that it "may infer any inference of guilt from the fact that he did not testify in his own defense." (Doc. 1, Ground Two). The Commonwealth, in response, stated its position that it "believed the correct instruction was properly given to the jury, but a typographical error exists in the transcription[.]" (Doc. 15, 2). The Commonwealth, however, did not suggest that a hearing was necessary to resolve this issue. (*See id.*).[7] Nor did the Commonwealth request a hearing on the accuracy of the trial transcript in response to Vonville's counseled petition. (*See* Doc. 35, *generally*). Now, though, following the issuance of the Report and Recommendation wherein it is noted that there is no "evidentiary basis" to conclude that an error exists in the trial transcript, (*see* Doc. 37, 40), the Commonwealth, for the first time, requests a hearing. (*See* Doc. 38-1, 11).

The Commonwealth waived this request by failing to raise it to Magistrate Judge Carlson. It is well-settled that "'[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waive.'" *Hubbard v. Pleasant Valley Sch. Dist.*, 03-0797, 2006 WL 42093, at *3 (M.D. Pa. Jan. 6, 2006) (Vanaskie, C.J.) (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)). If this were not the case, "'systemic efficiencies would be frustrated and the Magistrate[ ] [Judge]'s role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round.'" *Id*. (alteration omitted) (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir.1988)).

Finally, a hearing is not warranted for a more fundamental reason. As explained in the margin above, the trial transcripts in this case, including from July 13, 2010 -

---

[7]    To the contrary, the Commonwealth argued that Vonville was not entitled to a hearing. (*See* Doc. 15, 2).

the day the jury was charged - were certified as accurate by the stenographer and signed and approved by the trial judge. (*See* Doc. 27-1, p. 187; Doc. 27-2, p. 95). This is essentially the testimony of the court reporter and the trial judge that the jury was, in fact, instructed that they "may infer any inference of guilt from the fact that he did not testify in his own defense." (Doc. 27-2, 78:18-20). This finding comports with the Pennsylvania Rules of Appellate Procedure, namely Rule 1922(c), "Certification and filing," which states:

> *The trial judge shall examine any part of the transcript* as to which an objection is made pursuant to Subdivision (a) of this rule or *which contains the charge to the jury in a criminal proceeding*, and may examine any other part of the transcript, and after such examination and notice to the parties and opportunity for objection (unless previously given) *shall correct such transcript*. If the trial judge examines any portion of the transcript, he shall certify thereon, by reference to the page and line numbers or the equivalent, which portions thereof he has read and corrected. If no objections are filed to the transcript as lodged, or after any differences have been settled or other corrections have been made by the court, the official court reporter shall certify the transcript, and cause it to be filed with the clerk of the lower court.

Pa. R. App. P. 1922(c) (emphasis added). The Note to Rule 1922 goes on:

> The certification requirement of subdivision (c) recognizes that in practice the trial judge ordinarily will not actually read the transcript prior to certification unless objection is made by one of the parties. However, *the rule requires the judge to review and correct the charge in criminal cases*, to avoid the problems which arise when a later attempt is made by the trial judge under Rule 1926 (correction and modification of the record) to conform the transcript to his recollection of events.

*Id.* (emphasis added).

Given this, the trial judge was obligated under Rule 1922(c) to review and correct, if necessary, the jury charge. The purpose of this requirement, as set forth in the Note, is to avoid "problems" which could subsequently arise in "conform[ing] the transcript to [the judge's] recollection of events." *Id.* What this rule attempts to guard against is essentially what the Commonwealth advocates here: reconstructing the trial transcript (a decade later in this case) based on memory. But this is not warranted, nor

does it appear permissible under the applicable Pennsylvania procedural rules. The trial judge has since passed away and there is nothing in the record suggesting that the trial judge did not review the jury charge as Rule 1922(c) requires, and his signature on the trial transcript indicates that he did in fact do so. (Doc. 27-1, p. 95). Likewise, the Commonwealth did not, pursuant to Rule 1922(a) or Rule 1926, ever attempt to correct the purported error in the transcript. Thus, the Commonwealth has not identified any basis to conclude that the jury was charged in any way other than that which appears in the transcript.

Based on the foregoing, Vonville's procedural default of his ineffective assistance of trial counsel claim regarding the failure to object to the instruction allowing the jury to infer guilt from his decision not to testify is excused. The claim is addressed on the merits below.

## B.    Vonville's Trial Counsel was Ineffective Under *Strickland*.

Magistrate Judge Carlson recommends that Vonville's petition be conditionally granted because his trial counsel was ineffective for failing to object to the unconstitutional jury instruction. I agree that Vonville is entitled to relief on the merits.

Among other protections, the Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution "to have the assistance of counsel for his defense." U.S. Const. amend. VI. The applicable federal precedent for ineffective assistance claims is the well-settled two-prong test established by the Supreme Court in *Strickland*, 466 U.S. at 668, 104 S. Ct. 2052.

To establish he was denied the effective assistance of counsel under *Strickland*, the movant must show that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Id.* at 687-88, 691, 104 S. Ct. 2052. "Both *Strickland* prongs must be satisfied." *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (citing *United States v. Nino*, 878 F.2d 101, 104 (3d Cir. 1989)).

The first *Strickland* prong requires a defendant to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). Proving a deficiency in conduct "'requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.* (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052).

"Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. The benchmark for judging any claim of ineffectiveness of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

The second prong of *Strickland* requires a defendant to show that counsel's performance unfairly prejudiced the defendant, meaning that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. *Id.* at 687, 104 S. Ct. 2052. It is not enough to show that the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet such a test. *Id.* at 693, 104 S. Ct. 2052. Rather, the defendant must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. 2052. A reasonable probability is sufficient to undermine confidence in the outcome of the trial. *Id.* The Third Circuit has stated that the "*Strickland* prejudice standard is not 'stringent'- it is, in fact, 'less demanding than the preponderance standard.'" *Williams v. Beard*, 637 F.3d 195, 227

(3d Cir. 2011) (quoting *Jermyn*, 266 F.3d at 282).

With respect to the first *Strickland* prong, there is little doubt that Vonville's trial counsel's performance fell below an objective standard of reasonableness. Importantly, "where the deficiencies in counsel's performance are severe and cannot be characterized as the product of strategic judgment, ineffectiveness may be clear." *Workman*, 2019 WL 545563, at *9 (alteration omitted) (quoting *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989). Ultimately, "the relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Id*. (alteration omitted) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)).

The defectiveness of trial counsel's performance is apparent in the matter *sub judice*. In 1965, the Supreme Court held in no uncertain terms that "the Fifth Amendment . . . forbids . . . instructions by the court that such silence is evidence of guilt." *Griffin*, 380 U.S. at 615, 85 S. Ct. 1229. Yet, the holding in *Griffin* notwithstanding, this is precisely what Vonville's trial counsel permitted to go without objection when the trial court told the jury that they "may infer any inference of guilt from the fact that he did not testify in his own defense." (Doc. 27-2, 78:18-20). Thus, not only is ineffectiveness clear from the lack of objection to this instruction, there was simply no strategic basis for trial counsel to permit an instruction that the jury could infer guilt from Vonville's silence to go unchallenged.[8] Trial counsel's

---

[8]    In their first objection to the Report and Recommendation, the Commonwealth points to the Magistrate Judge's statements that trial counsel's pre-trial failings "effectively silenced Vonville's witnesses who would have presented evidence concerning his state of mind, the only truly contested issue in this case" and that "the Superior Court did not seem to consider the potential relevance of state of mind evidence as it related to the lesser offense of manslaughter" on direct appeal. (Doc. 37, 2, 15). The Commonwealth in their first objection contends that the Superior Court "was correct not to consider the potential relevance of *mens rea* evidence as it related to manslaughter" because even if Vonville's state of mind evidence was presented at trial, he would not have been able to show provocation

performance was constitutionally deficient.

Vonville also satisfies the second *Strickland* prong. In that regard, I agree with Magistrate Judge Carlson that in the factual context of this case, Vonville has demonstrated "specific prejudice" resulted from trial counsel's deficient performance. *Workman*, 2019 WL 545563, at *9. The key issue at trial was Vonville's mental state at the time he killed Hernandez. Indeed, the closing arguments at trial by both Vonville's counsel and the Commonwealth reflect that this was the central issue before the jury. (*See* Doc. 27-2, 44:10-64:22). Trial counsel, though, based on her prior failings in the case, was barred from presenting any evidence at trial as to Vonville's state of mind at the time of the crime. This failure was then compounded and magnified when, after Vonville exercised his Fifth Amendment right, trial counsel allowed to go unchecked the trial judge's comment to the jury that they could infer guilt because Vonville did not testify. Thus, not only did trial counsel's own professional errors preclude her from offering any testimony of Vonville's mental state during the commission of the offense, she then failed to act when the trial judge instructed the jury that they could infer criminal intent from her client's silence at trial. On these facts, Vonville has "show[n] that but for counsel's unprofessional errors there is a reasonable probability that the outcome of the proceeding would have been different." *Workman*, 2019 WL 545563, at *10. Vonville is entitled to habeas relief under 28 U.S.C. § 2254.

---

as required to make out a heat of passion defense. (*See* Doc. 38-1, 1-7). Unlike the Commonwealth, I read this aspect of the Report and Recommendation only as highlighting the errors of Vonville's trial counsel's performance at trial and on direct appeal, not as a basis for which to grant Vonville relief or as a criticism of the Superior Court's analysis. Moreover, as Vonville notes, he had little reason to submit evidence of provocation at trial because "the lack of state of mind evidence, by itself, denied [him] the opportunity to pursue provocation evidence and a lesser manslaughter conviction because manslaughter required evidence of state of mind and provocation." (Doc. 45, 7).

## IV. Conclusion

For the above stated reasons, Magistrate Judge Carlson's Report and Recommendation will be adopted and Vonville's petition for writ of habeas corpus will be conditionally granted. The Commonwealth will be directed to retry Vonville within 120 days or release him from custody.

An appropriate order follows.


March 5, 2019                                     /s/ A. Richard Caputo
Date                                                    A. Richard Caputo
                                                      United States District Judge