## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHILLIP J. VONVILLE,      :
      :
      Petitioner,      :      No. 3:14-CV-1582
      :
      v.      :      (JUDGE CAPUTO)
      :
JOHN KERESTES, *et al*.,      :      (MAGISTRATE JUDGE CARLSON)
      :
      Respondents      :

## RESPONDENT'S BRIEF IN SUPPORT OF ITS MOTION TO STAY

## TO THE HONORABLE A. RICHARD CAPUTO:

**NOW COMES** E. David Christine, Jr., District Attorney of Monroe County, Attorney for the Respondents, by and through Andrew M. Kroeckel, Assistant District Attorney, and presents this brief in support of the Commonwealth's Motion to Stay as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

On July 13, 2010, the Petitioner, Phillip Vonville, was found guilty of third-degree murder following a two-day jury trial. At trial, the Commonwealth presented six witnesses. The Petitioner's ex-girlfriend, Brittney Hartley, testified that the Petitioner was extremely jealous of her relationships, regardless of the nature, with other people, particularly her co-workers. Ms. Hartley also testified that the Petitioner "really didn't like Jessica [Ladd] and she is my best friend." (Notes of Trial Testimony, "N.T.T.," at 25-26, 29.) The Petitioner also became

enraged when a male Army recruit held Ms. Hartley's feet during a physical fitness test Ms. Hartley took before leaving for basic training for the Army Reserves. (N.T.T. at 29.)  On a few occasions the Petitioner had threatened to kill Ms. Hartley and the person she was with if he ever caught her cheating on him. (N.T.T. at 30.)

On September 17, 2009, four days before Ms. Hartley was set to leave for basic training, Ms. Hartley and the Petitioner went to dinner.  Afterward, Ms. Hartley was checking her email and other messages on her computer to see if a few friends had sent her addresses so she could write to them while she was at basic training.  When the Petitioner walked by, he noticed that Ms. Hartley had on the screen the Myspace page of a male friend.  The Petitioner became incensed, so much so that Ms. Hartley felt compelled to change the password to her Myspace account and leave the couple's trailer.  As she attempted to do so, the Petitioner chased her outside and punched the windows and hood of her car while screaming for her to get out of the car.  (N.T.T. at 37-39.)  Originally intending to go to Ms. Ladd's house, Ms. Hartley changed her mind after learning that the Petitioner had taken her stepfather's truck.  Assuming that the Petitioner would look for her at Ms. Ladd's house, Ms. Hartley drove to Yonkers, New York, where Christopher Hernandez lived.  (N.T.T. at 40-41.)  Mr. Hernandez, the victim in this matter, and Ms. Hartley were childhood friends and had recently reconnected on a platonic

level.  (N.T.T. at 30-32.)  When Ms. Hartley returned from New York, she set about severing all ties with the Petitioner, closing their joint bank account and returning all of the money to him.  (N.T.T. at 45.)  She also left the trailer she shared with the Petitioner and her parents, intending to stay with Ms. Ladd.

The night after going to New York, Ms. Hartley was treated to a surprise party, at which Mr. Hernandez made an equally-surprising appearance. (N.T.T. at 46-47.)  At some point during the party, Ms. Hartley realized that she needed to retrieve a bag from her parents' trailer.  Mr. Hernandez offered to drive, and the pair arrived at the trailer around 2 a.m.  At approximately 2:30 a.m. the Petitioner arrived home from work while Ms. Hartley and Mr. Hernandez were still in the trailer.  The two men introduced themselves to each other but had no further interaction, and Ms. Hartley and Mr. Hernandez left after Ms. Hartley declined the Petitioner's invitation to discuss their relationship. (N.T.T. at 48-50.)

The following morning Ms. Hartley's mother, who was upset and crying, called Ms. Hartley and asked her to come to the family trailer and speak with the Petitioner.  Mr. Hernandez heard how upset Ms. Hartley's mother was and indicated he wanted to go to the home with Ms. Hartley.  Ms. Hartley told him that was not necessary and that he should go about with his day. (N.T.T. at 52-53.)  A short while later, Ms. Hartley returned to the trailer alone and ultimately ended up in an argument with the Petitioner.  (N.T.T. at 58.)  As the argument was ongoing,

the Petitioner carried several items to a burn barrel in the backyard.  Shortly

thereafter, Mr. Hernandez arrived in his own vehicle.  (N.T.T. at 63.)  When the

Petitioner saw Mr. Hernandez he pulled a knife from his hip and started running

toward Mr. Hernandez's truck, where Mr. Hernandez remained, oblivious to the

threat coming toward him.  (N.T.T. at 65, 66.)  Pushing Ms. Hartley away, the

Petitioner attempted to stab Mr. Hernandez through the open driver's side window.

(N.T.T. 68, 70.)  Apparently not wounded, Mr. Hernandez jumped over to the

passenger side.  The Petitioner ran around to the passenger side and punched out

the passenger side window with the knife, stabbing Mr. Hernandez in the side and

ultimately killing him.  (N.T.T. at 72-73.)

On September 30, 2010, the Honorable Ronald Vican sentenced the

Petitioner to twenty (20) to forty (40) years in a State Correctional Institute.

Thereafter, the Petitioner filed direct appeals in state court, all of which were

denied.  He also filed a PCRA in the Monroe County Court of the Common Pleas

and subsequent collateral appeals in state court, all of which were denied.  On

August 12, 2014, the Petitioner, acting *pro se*, filed for federal habeas corpus relief

pursuant to 28 U.S.C. § 2254.  Thereafter, Magistrate Judge Carlson appointed the

Federal Public Defender's Office to represent the Petitioner, which filed an

amended petition on Petitioner's behalf.  On November 5, 2018, Magistrate Judge

Carlson issued a Report and Recommendation, recommending that, despite a

procedural default, Petitioner's trial counsel was ineffective in failing to object to the trial court's jury instructions, and the default should be excused.

Thereafter, the Commonwealth filed timely objections to Magistrate Judge Carlson's Report and Recommendation.  On March 5, 2019, District Judge A. Richard Caputo issued an Order and Memorandum, adopting the Report and Recommendation, conditionally granting the Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, vacating the Petitioner's conviction and sentence, and ordering the Commonwealth to retry the Petitioner within 120 days from date of the entry of the Order dated March 5, 2019.  The Commonwealth timely filed with the District Court the instant a Notice of Appeal to the United States Court of Appeals for the Third Circuit.

**ARGUMENT**

Pursuant to Rule 23 of the Federal Rules of Appellate Procedure, while Judge Caputo's order releasing the Petitioner is under review with the Third Circuit, the Petitioner must be released on personal recognizance, with or without surety, "unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise." F.R.A.P. 23(c).

In *Hilton v. Braunskill*, the Supreme Court determined the factors a court should "consider in determining whether to release a state prisoner pending appeal

of a district court order granting habeas relief." 481 U.S. 770, 772 (1987). The Supreme Court ultimately adopted a "common-sense" approach, concluding "that the general standards governing stays of civil judgments should also guide courts when they must decide whether to release a habeas petitioner pending the State's appeal." *Id.* at 776. Under Rule 62 of the Federal Rules of Civil Procedure and Rule 8 of the Federal Rules of Appellate Procedure, four factors are typically considered: (1) whether the party seeking the stay has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured without a stay; (3) whether a stay would substantially injure the other party; and (4) where the public interest lies. *Hilton*, 481 U.S. at 776. "There is presumption in favor of enlargement of the petitioner with or without surety, but it may be overcome if the traditional stay factors tip the balance against it." *Id*. at 777. These rules are not rigid. Other factors, such as the possibility of flight and danger to the community, should also be considered. *Id*.

The relief the Commonwealth ultimately seeks from Third Circuit is a remand of this matter to the District Court, where an evidentiary hearing could be held. At said hearing, the Commonwealth would seek to call as witnesses Attorneys Chad Martinez and Bernard Anderson, the assistant district attorneys who prosecuted the Respondent's case in state court, and Susanne Kern, the court

reporter who served as the stenographer during the Respondent's trial.[1]  It is believed and therefore averred that Attorneys Martinez and Anderson and Ms. Kern would testify that Judge Vican did not instruct the jury that they "may infer any inference of guilt" from the fact the Petitioner did not testify.  It is further believed and therefore averred that Ms. Kern would testify that her transcription contains an error, specifically that she left out the word "not" between "may" and "infer."  This testimony, if believed by the district court, would serve to remedy the currently perceived notion that Judge Vican instructed the jury they may infer an inference of guilt from the Petitioner's decision not to testify.

The Commonwealth also faces tremendous prejudice and irreparable injury without a stay.  This matter originally went to trial in July of 2010, nearly nine years ago.  While few witnesses were called to testify, the Commonwealth would need to locate at least two of the witnesses, including Brittney Hartley, the lone eyewitness to this horrific crime.  Her whereabouts, nearly nine years later, are currently unknown. Additionally, Detective Richard Luthcke has since retired from the Pocono Mountain Regional Police Department and spends significant time in Florida.

---

[1] Unfortunately, Judge Vican, who presided over the trial, has since passed away, and the Petitioner's trial counsel, Robin Spishock, Esq., has recently been stricken with cancer and likely would not be able to testify.

The Petitioner will not face substantial injury if a stay is granted. The Petitioner will not lose any constitutional rights. Should the Commonwealth ultimately not prevail on its appeal, the Petitioner will be in the exact same place he is today. He will still be entitled to a new jury trial.

The public interest lies in the pursuit of justice. A jury of twelve, after hearing the evidence, including the testimony of Ms. Hartley, who personally witnessed the Respondent stab and kill the victim, convicted the Petitioner of third-degree murder. Assuming, as the Commonwealth avers, that Judge Vican did not provide the jury with constitutionally-deficient instructions, the people of Monroe County are entitled to know that justice was served on their behalf and the Respondent was properly convicted. If it is ultimately determined that Judge Vican did in fact improperly instruct the jury, then the Petitioner will still be entitled to a new trial. The Commonwealth is interested in fleshing this issue out fully in the interest of justice, which the public deserves.

As the Supreme Court has stated, the possibility of flight must be considered. *Id.* In the event a stay is not granted and the Petitioner is released pending his retrial, he has a significant reason to run. He once again would be facing murder charges following an unprovoked, brutal stabbing that was witnessed by Ms. Hartley. The odds of a second conviction at retrial are high,

assuming Ms. Hartley can be located, and the Petitioner would have reason not to appear.

The district court must also consider the Commonwealth's interest in "continuing custody and rehabilitation pending a final determination of the case on appeal." *Id*. This factor weighs heavily "where the remaining portion of the sentence to be served is long." *Id*. In the instant matter, the Petitioner was sentenced to twenty (20) to forty (40) years. Sentenced on September 30, 2010, he has served less than nine years of his minimum sentence. He potentially faces thirty-one (31) more years of incarceration. This factor should, therefore, be given substantial weight.

Finally, and perhaps most importantly, the Petitioner poses a substantial risk to the community, a relevant factor under *Hilton*. *Id*. at 779. The Petitioner was convicted after stabbing the victim in the abdomen, an attack that was completely unprovoked and occurred while the victim was sitting in his truck, looking down and listening to music. After shoving Ms. Hartley out of the way, the Petitioner smashed out the truck window and stabbed the victim. The Petitioner then turned the knife on himself, all of which demonstrates the substantial risk the Petitioner poses to the community.

### CONCLUSION

For the reasons set forth above, the Commonwealth respectfully requests this Honorable Court to grant the Commonwealth's Motion to Stay.

Respectfully submitted,

_____
Andrew M. Kroeckel
Assistant District Attorney
PA ID No. 313480
Assistant District Attorney
Office of the District Attorney
Monroe County Courthouse
610 Monroe St, Ste. 126
Stroudsburg, PA 18360
(570) 517-3052