IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILIP J. VONVILLE, | : | No. 3:14-CV-01582 |
| *Petitioner* | : | |
| | : | |
| v. | : | (Judge Caputo) |
| | : | |
| JOHN KERESTES, *et al.*, | : | (Electronically Filed) |
| *Respondents* | : | |

## BRIEF IN OPPOSITION TO RESPONDENTS' MOTION TO STAY

And now, comes the Petitioner, Philip J. Vonville, by his attorney, Frederick W. Ulrich, of the Federal Public Defender's Office, and files the following brief in opposition to Respondents' motion for a stay of the order granting Mr. Vonville a new trial.

## I.   INTRODUCTION

In this crime involving a heat of passion, trial counsel's ineffective assistance precluded Mr. Vonville from presenting the only defense available to him based on his mental state, that he was—at most—guilty of manslaughter. Unable to present a defense, counsel compounded her error by then allowing the court to instruct the jury that they may draw an adverse inference from Mr. Vonville's exercise of his Fifth Amendment right to silence.  On this record, Your Honor and the Magistrate Judge found that counsel's omissions were enough to overcome procedural default and warranted habeas relief in the form of a new trial.

Although effectively conceding the correctness of these findings based on the existing record, Respondents argue that they are entitled to a stay so that they can now have a chance to supplement the record through an evidentiary hearing. But having not done so in state court or when the matter was pending before the Magistrate Judge, they have forfeited that opportunity. And Respondents' motion and speculative proffer fall well short of the showing necessary for a stay.[1]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### a.    The crime

In 2009, Mr. Vonville and Brittney Hartley were engaged. *See* (Doc. 46 at 2). Their relationship, however, deteriorated. And as it did, so did Mr. Vonville's mental state—he became increasingly jealous, violent, erratic, self-destructive, and suicidal. *See* (Doc. 37 at 5). Mr. Vonville's jealousy centered on the belief that Ms. Hartley was engaged in infidelity. *See id.* As their relationship foundered, Ms. Hartley reconnected with someone she had once dated, the victim, Chris Hernandez. *See id.* at 6. Ultimately, Ms. Hartley broke off the engagement with Mr. Vonville. At the time, Mr. Vonville was residing with Ms. Hartley and her parents.

---

[1] When addressing Respondents' objections to the report and recommendation, Your Honor denied their belated request for an evidentiary hearing for the same reason—it was "entirely speculative." (Doc. 46 at 21).

When Ms. Hartley returned home after having been at a party with Mr. Hernandez, she encountered Mr. Vonville, who was upset, threatening suicide, and burning his personal effects. *See* (Doc. 46 ay 5). As Mr. Vonville and Ms. Hartley argued, Mr. Hernandez arrived in his truck. *See id*. Mr. Vonville then pulled a knife and ran toward the truck. Once there, he managed to stab Mr. Hernandez twice, wounding him in the abdomen. *See id*. Mr. Vonville then stabbed himself twice in the abdomen and slit his wrists. *See id*. Mr. Vonville survived his wounds, but Mr. Hernandez did not.

Police interviewed Mr. Vonville two times while he was in the hospital. He provided recorded statements acknowledging stabbing Mr. Hernandez.

### b.    The charges and the trial

State authorities charged Mr. Vonville with an open count of criminal homicide, which includes first, second, and third-degree murder, as well as voluntary and involuntary manslaughter. *See* 18 Pa. C.S. 2501(b). Given the circumstances of the offense, the central issue was Mr. Vonville's state of mind. *See* (Doc. 37 at 2). As Your Honor found, although a psychiatrist concluded that Mr. Vonville met the criteria for diminished capacity and guilty but mentally ill, counsel failed to provide the required notice of a mental infirmity defense. *See* (Doc. 46 at 6). Counsel's omission led to the trial court precluding Mr. Vonville from presenting both expert and lay testimony of his mental state.

Mr. Vonville exercised his right to not testify.  The trial court, however, instructed the jury, among other things, that

> The Defendant did not testify. It is entirely up to the Defendant in every criminal trial whether or not to testify.  He has an absolute right found on the Constitution to remain silent. *You may infer any inference of guilt from the fact that he did not testify in his own defense*.

(Doc. 46 at 7).  No one objected to this instruction.  And the jury found Mr. Vonville guilty of third-degree murder.

### c.      The direct appeal and post-conviction proceedings

Mr. Vonville appealed.  As a result, the court reporter transcribed the notes of testimony.   Neither the prosecutor nor defense counsel objected to the accuracy of the transcript.  *See id*. at 24.  The court reporter certified that the transcript as accurate.  And the trial court judge then signed and approved the transcript.  *See* (Doc. 46 at 23).  During direct appeal and the post-conviction proceedings, counsel for Mr. Vonville did not challenge the instruction that permitted the jury to infer guilt from his failure to testify.

### d.      The habeas corpus proceedings

In his *pro se* habeas petition, however, Mr. Vonville raised the constitutional propriety of the jury instruction.  Respondents argued, at first, that Mr. Vonville had procedurally defaulted this claim by failing to raise it earlier.  But the Magistrate Judge excused the default under the *Martinez v. Ryan*, 566 U.S. 1

(2012) framework. *See* (Doc. 37 at 35-38). On the merits, Respondents claimed that the court reporter must have mistakenly transcribed the trial court's instruction. *See* (Doc. 37 at 40). But Respondents did not request an evidentiary hearing or supplement the record with anything to support this theory. *See id*.

After the Magistrate Judge recommended granting Mr. Vonville's petition, Respondents filed objections. They argued that the transcript reflects a scrivener's error and, if Your Honor felt bound by it, they should have the opportunity for a hearing to present testimony from the prosecutors and defense counsel. *See* (Doc. 46 at 21). Finding this argument waived and speculative, Your Honor declined the invitation to hold a hearing. *See id*. at 21-42. Your Honor thus adopted the Magistrate Judge's report and recommendation and directed the Commonwealth to retry Mr. Vonville within 120 days or release him from custody. *See id*. at 28.

### e.    The appeal and request for issuing a stay

Respondents appealed and moved for a stay. In support of the stay, Respondents argue that they intend to seek relief from the Third Circuit in the form of a remand for an evidentiary hearing. At this hearing, they believe—with no supporting evidence—that the prosecutors and the court reporter will testify that the transcript contains a scrivener's error. *See* (Doc. 48 at ¶ 12).

## III.    QUESTION INVOLVED

Whether Your Honor should deny a stay while Respondents appeal the order directing that Mr. Vonville receive a new trial, when the basis for the appeal is an issue that they waived, their argument is based on mere speculation, and they cannot satisfy the criteria for a stay?

## IV.    ARGUMENT

### A.    Respondents have no right to a stay of Your Honor's order because the appeal issue is waived, their argument is based on mere speculation, and they cannot satisfy the criteria for a stay.

Respondents seek a stay so that they can appeal to the Third Circuit, arguing for an evidentiary hearing to show that the trial court's unconstitutional language in the jury instruction was a scrivener's error. *See* (Doc. 55 at 607). But the same problems Your Honor has identified with this argument remain—it's waived and based on speculation.

In any event, to obtain a stay, Respondents must demonstrate four things. First, they must make a strong showing that they are likely to succeed on the merits. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Second, they must show irreparable injury if a stay is not granted. *See id*. Third, they must show that a stay will not substantially injure Mr. Vonville. *See id*. And finally, they must show that a stay serves the public interest. *See id*. None of these criteria are satisfied here.

**1.    Respondents have not shown that they are likely to succeed on the merits.**

The most important consideration in the stay analysis is the strength of the first factor.  *See In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).  While the level of evidence necessary for this showing is balanced against the strength of the other factors, at a minimum there must be proof of a probability of winning.  *See id*.  Having lost before Your Honor and the Magistrate Judge, Respondents face an uphill battle.  *See Kahn v. Elwood*, 232 F. Supp. 2d 344, 350 (M.D. Pa. 2002).

Respondents are not arguing over a point of law where the landscape is unclear or where there is a division of authority.  *Cf. id*. (observing that "immigration law is a dismal swamp" and a fast changing area).  Instead, Respondents seek relief on a point that they waived at the state level and then again before the Magistrate.

To illustrate, Respondents contend that the trial transcript reflects a typographical error in the court's instruction about inferring of guilt from Mr. Vonville's failure to testify.  But the time for objecting to this purported error was when the court reporter filed the transcript.  *See* Pa.R.A.P. 1922(a) (prescribing the time for the parties to object to the transcript).  And Rule 1922(c) specifically obligates the trial court to review the jury charge and then sign and approve the transcript.  *See* (Doc. 46 at 23) (citing Pa.R.A.P. 1922(c)).  As the prosecutors failed to object to the transcript when it was lodged, they are now bound by it.  *See*

7

*Commonwealth v. Percell*, 418 A.2d 340, 344 n.4 (Pa. Super.), *rev'd on other grounds*, 418 A.2d 340 (Pa. 1974).[2]

But even if the Third Circuit were inclined to ignore the governing rule, when Respondents made this argument before the Magistrate Judge, they did not request an evidentiary hearing. *See* (Doc. 46 at 22).  Nor did they seek to expand or supplement the record with, for instance, the court reporter's notes. *See* FED. R. § 2254 P. 7 advisory committee note (explaining that "[t]he record may be expanded to include material relevant to the merits of the petition").  Based on these omissions, Your Honor properly found that Respondents waived any request for an evidentiary hearing. *See* (Doc. 46 at 22).  And there's no basis for believing that the Third Circuit will see things differently.

This leaves Respondents' unsupported contention that the jury instructions reflect a transcription error, and their belief that the court reporter and the prosecutors will testify to that effect.[3]  But as Your Honor concluded, this is mere speculation—not grounds for reversal. *See* (Doc. 46 at 21).  In sum, Respondents do not have a merit-worthy issue for appeal, much less a likelihood of success.

---

[2] *Accord Commonwealth v. Young*, 317 A.2d 258, 263 (Pa. 1974); *Cook v. Smith*, 812 F. Supp. 561, 563 (E.D. Pa. 1993).

[3] It's also unlikely in the extreme that anyone would have a recollection of the trial court's jury instructions nine years after the trial.

**2.    Respondents cannot show irreparable injury because one of their witnesses has retired and they have not bothered looking for the other one.**

As for the second factor, Respondents must prove that irreparable injury is likely not merely possible. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). On this, the Respondents offer that they do not know the location of the lone witness to the crime, Brittney Hartley. They also claim that the lead detective, Richard Luthcke, retired from the Pocono Mountain Regional Police Department and spends significant time in Florida. *See* (Doc. 55 at 7). That Respondents know Detective Luthcke's retirement schedule tends to undermine the view that his whereabouts are unknown. What's more, Mr. Luthcke works part time as a county detective for the District Attorney in the same office as the Monroe County prosecutors, so he should not be too difficult to find.[4] And a cursory check on several publically available websites reveals the whereabouts of Ms. Hartley.[5]

---

[4] *See* http://monroecountyda.com/investigators/

[5] Ms. Hartley's contact information appears on these websites:

██████████████████████████████████████████

████████████████████████████

██████████████████████████████

████████████████████████████████████████

That said, even if one or both witnesses were unavailable, the prosecution would not be irreparably harmed. That's because there is a transcript of their testimony and they were subject to cross-examination. The Rules of Evidence would therefore permit the prosecution to introduce their former testimony. *See* Pa.R.E. 804(b)(1). For these reasons, there is no basis to believe that the lack of a stay will irreparably harm the prosecution.

### 3.    A stay will cause substantial injury to Mr. Vonville.

Respondents maintain that Mr. Vonville will not face substantial injury or lose any constitutional rights if a stay is granted. *See* (Doc. 55 at 8). As Mr. Vonville is incarcerated and as the continuation of that punishment may not be justified, he will suffer substantial harm if a stay is granted. *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1451 (11th Cir. 1986) (emphasizing that "[t]here is, perhaps, no injury more substantial and less reparable than improper denial of the right to liberty."). Similarly, continued incarceration necessarily deprives one of constitutional rights—liberty, privacy, property, and right to vote—to name a few. The harm here is particularly acute since Your Honor's holding places Mr. Vonville in the same position as he was before the conviction—presumed innocent. For these reasons, this factor weighs heavily in Mr. Vonville's favor.

**4.      The public interest is not served by Mr. Vonville's continued incarceration during a stay**

Respondents assert that the public interest is served by the pursuit of justice. *See* (Doc. 55 at 8). In their view, that involves having an evidentiary hearing to flesh out the issue. But that argument is encompassed within the merit of their appeal, which as noted, is lacking. And the pursuit of justice implicates Mr. Vonville's rights too, such as the presumption of innocence and due process. Neither of those constitutional concepts are served by a stay while Mr. Vonville remains in prison.

Respondents also claim that Mr. Vonville is a flight risk and a danger to the community. Yet there is no basis to assume that Mr. Vonville will flee. For example, he has not failed to appear in other circumstances. *Cf., e.g., United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) (noting that a prior record of appearing in court as required when released before trial is a factor in favor of release in the pretrial context). Nor is there evidence of a danger to the community. And Mr. Vonville's heat of passion crime differs from someone who engaged in, for instance, racketeering. *Cf. e.g., United States v. Provenzano*, 605 F.2d 85, 93 (3d Cir. 1979) (recognizing that under the Bail Reform Act "the danger to the community posed by the defendant must be of such dimension that only his incarceration can protect against it."). In sum, Respondents speculative flight and danger to the community risks do not support a stay.

11

## V.   CONCLUSION

For all these reasons, the Petitioner, Philip J. Vonville, requests that Your

Honor deny Respondents' request for a stay of your order directing a retrial within

120 days or his release.

Respectfully submitted,

Date:  April 22, 2019

*/s/ Frederick W. Ulrich*
FREDERICK W. ULRICH, ESQUIRE
Asst. Federal Public Defender
Attorney ID# PA44855
100 Chestnut Street, Suite 306
Harrisburg, PA  17101
Tel. No. 717-782-2237
Fax No. 717-782-3881
*fritz_ulrich@fd.org*
*Attorney for Philip J. Vonville*

12

## CERTIFICATE OF SERVICE

I, Frederick W. Ulrich, Esquire, of the Federal Public Defender's Office, do

hereby certify that I served a copy of the above **Brief in Opposition to**

**Respondents' Motion to Stay**, by Electronic Case Filing, and by placing a copy in

the United States mail, first class in Harrisburg, Pennsylvania addressed to:

ANDREW M. KROECKEL, ESQUIRE
Assistant District Attorney
Office of the District Attorney
Monroe County Courthouse
610 Monroe Street, Suite 126
Stroudsburg, PA  18360
*akroeckel@monroecountypa.gov*

PHILIP J. VONVILLE
Inmate No. JY8852
SCI Mahanoy
301 Morea Road
Frackville, PA  17932


Date:  April 22, 2019                    */s/ Frederick W. Ulrich*
                                         FREDERICK W. ULRICH, ESQUIRE
                                         Asst. Federal Public Defender
                                         Attorney ID# PA44855
                                         100 Chestnut Street, Suite 306
                                         Harrisburg, PA  17101
                                         Tel. No. 717-782-2237
                                         Fax No. 717-782-3881
                                         *fritz_ulrich@fd.org*
                                         *Attorney for Philip J. Vonville*